**Docket No. 24-736**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

---

ZHONGTIE DACHENG (ZHUHAI) INVESTMENT MANAGEMENT CO LTD,

*Petitioner - Appellee,*

v.

JINGGANG YAN; LIANG XIUHONG,

*Respondents - Appellants.*

---

*Appeal from a Decision of the United States District Court for the Central District of California,*
*No. 8:22-cv-00461-KK-ADS · Honorable Kenly Kiya Kato*

# BRIEF OF APPELLANTS

---

David M. Cooper
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

William R. Sears, IV
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000

*Counsel for Respondents - Appellants*

---

 COUNSEL PRESS · (213) 680-2300

PRINTED ON RECYCLED PAPER 

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................1

JURISDICTIONAL STATEMENT .............................................................3

ISSUES PRESENTED..................................................................................4

STATEMENT OF THE CASE......................................................................4

    A.    The Parties ..............................................................................4

    B.    The Underlying Loan Dispute................................................5

    C.    The Forged "Personal Guarantees" ......................................6

    D.    Zhongtie Initiates the First Arbitration Proceeding ............7

    E.    Zhongtie Initiates the Second Arbitration Proceeding........8

    F.    Zhongtie's Petition To Confirm The Arbitration Award .....9

    G.    The District Court's Order Granting the Petition................9

SUMMARY OF ARGUMENT ...................................................................10

STANDARD OF REVIEW .......................................................................13

ARGUMENT ............................................................................................13

I.    THE DISTRICT COURT ERRED IN CONFIRMING THE AWARD BECAUSE THE LACK OF NOTICE OF THE ARBITRATION VIOLATED DUE PROCESS ..........................................13

    A.    Notice Must Satisfy Due Process Under The United States Constitution In Order To Enforce The Arbitral Award ......................13

    B.    Due Process Demands Further Attempts At Notice If Mail Is Returned As Undelivered ..................16

    C.    The District Court's Holding Of Proper Notice Conflicts With Binding Precedent ..................17

II.    THE DISTRICT COURT ERRED IN HOLDING THAT APPELLANTS' CHALLENGE TO THE EXISTENCE OF THE AGREEMENT WAS WAIVED BECAUSE IT WAS NOT RAISED IN THE ARBITRATION ..................................................24

    A.    The Court Is Required To Decide Whether The Agreement Was Forged And Thus Whether The Award Is Unenforceable .................24

B.   A Party Does Not Waive The Argument That It Never Agreed To Arbitration By Not Attending The Arbitration ............................ 27

C.   There Must Be A Hearing Or Jury Trial To Resolve The Factual Dispute Over Whether Appellants Signed The Agreements ........................................................................... 30

CONCLUSION ...................................................................................... 33

REQUEST FOR ORAL ARGUMENT ................................................... 34

STATEMENT OF RELATED CASES ................................................... 35

CERTIFICATE OF COMPLIANCE ...................................................... 36

CERTIFICATE OF SERVICE .............................................................. 37

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

**<u>Cases</u>**

*Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*,
    21 F.4th 631 (9th Cir. 2021) ...............................................................26

*Al-Qarqani v. Chevron Corp.*,
    8 F.4th 1018 (9th Cir. 2021) .........................................................24, 29

*Arb. Between Exceed Int'l Ltd. v. DSL Corp.*,
    2014 WL 1761264 (S.D. Tex. Apr. 30, 2014) ...................................29

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ....................................................................12, 27

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006) ...........................................................10, 25, 26

*Camping Constr. Co. v. Dist. Council of Iron Workers*,
    915 F.2d 1333 (9th Cir. 1990) ...........................................................27

*CEEG (Shanghai) Solar Sci. & Tech. Co., Ltd v. LUMOS LLC*,
    829 F.3d 1201 (10th Cir. 2016) .........................................................14

*Chime Inst. v. Haney*,
    2013 WL 12114616 (C.D. Cal. Oct. 28, 2013) .................................31

*China Nat. Metal Prod. Imp./Exp. Co. v. Apex Dig., Inc.*,
    379 F.3d 796 (9th Cir. 2004) .............................................................13

*Clark v. Cap. Credit & Collection Servs., Inc.*,
    460 F.3d 1162 (9th Cir. 2006) ...........................................................30

*Comedy Club, Inc. v. Improv W. Assocs.*,
    553 F.3d 1277 (9th Cir. 2009) ...........................................................13

*De Fontbrune v. Wofsy*,
    39 F.4th 1214 (9th Cir. 2022) ..................................................17, 18, 20

*F.D.I.C. v. Woodside Const., Inc.*,
    979 F.2d 172 (9th Cir. 1992) .............................................................22

iv

*Foss v. Rowen*,
704 F. App'x 719 (9th Cir. 2017) ................................................................ 23-24

*Generica Ltd. v. Pharm. Basics, Inc.*,
125 F.3d 1123 (7th Cir. 1997) ............................................................... 14

*Gennarelli v. Charter Commc'ns, Inc.*,
2021 WL 4826612 (C.D. Cal. Apr. 22, 2021) ................................... 28

*GIB, LLC v. Salon Ware, Inc.*,
634 F. App'x 610 (9th Cir. 2016) ......................................................... 28

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
284 F.3d 1114 (9th Cir. 2002) ............................................................. 15

*Gonzalez v. Food Mgmt. Partners, Inc.*,
2020 WL 4437267 (C.D. Cal. Aug. 3, 2020) .................................... 30

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010) ............................................................................. 25

*Guarino v. Productos Roche S.A.*,
839 F. App'x 334 (11th Cir. 2020) ............................................. 20, 21

*Henderson v. Bonaventura*,
649 F. App'x 639 (9th Cir. 2016) ........................................................ 23

*Jones v. Flowers*,
547 U.S. 220 (2006) ........................................ 2, 11, 16, 17, 18, 20

*Linley Invs. v. Jamgotchian*,
670 F. App'x 627 (9th Cir. 2016) ....................................................... 15

*Ma v. Fang*,
2022 WL 1078867 (C.D. Cal. Mar. 2, 2022) ............................. 14, 21

*Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*,
665 F.3d 1091 (9th Cir. 2011) ...................................................... 13, 14

*Ministry of Def. of Islamic Republic of Iran v. Gould Inc.*,
887 F.2d 1357 (9th Cir. 1989) ............................................................. 15

*Moser v. Encore Cap. Grp., Inc.*,
    455 F. App'x 745 (9th Cir. 2011) ........................................23

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) .............................................15, 16

*Nelson v. Adams USA, Inc.*,
    529 U.S. 460 (2000) ..................................................22

*Petersen v. Boeing Co.*,
    715 F.3d 276 (9th Cir. 2013) ..........................................22

*Provenz v. Miller*,
    102 F.3d 1478 (9th Cir. 1996) .........................................23

*Reichert v. Rapid Invs., Inc.*,
    56 F.4th 1220 (9th Cir. 2022) .........................................26

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ...................................................26

*Sanford v. MemberWorks, Inc.*,
    483 F.3d 956 (9th Cir. 2007) .......................................25, 26

*Shultz v. TTAC Publ'g, LLC*,
    2020 WL 6937818 (N.D. Cal. Oct. 26, 2020) ............................28

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
    925 F.2d 1136 (9th Cir. 1991) ....................3, 12, 27, 28, 30

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ............................17, 18, 20

*Wang v. Kahn*,
    2022 WL 36105 (N.D. Cal. Jan. 4, 2022) ....................26, 28, 30

*Xuchu Dai v. E. Tools & Equip., Inc.*,
    571 F. App'x 609 (9th Cir. 2014) ......................................13

*Yukos Capital S.A.R.L. v. OAO Samaraneftegaz*,
    963 F. Supp. 2d 289 (S.D.N.Y. 2013) ..................................21

## **Statutes**

28 U.S.C. § 1291 ...........................................................................................3

## **Other Authorities**

Convention on the Recognition and Enforcement of Foreign Arbitral
    Awards, 21 U.S.T. 2517 (1958) ("New York Convention")........2, 13, 14, 24, 25

## PRELIMINARY STATEMENT

Appellants Jinggang Yan and Xiuhong Liang (collectively, "Appellants") are a married couple who lawfully emigrated to the United States in January 2018 and have resided in California continuously since that time. Appellee Zhongtie Dacheng (Zhuhai) Investment Management Co. Ltd. ("Zhongtie") is an investment management company operating in China.

In November 2017, Zhongtie agreed to loan RMB 30,000,000 to Shanghai Fukong Interactive Entertainment Co. Ltd. ("Fukong"), a company then affiliated with Appellant Yan. As a part of the loan agreement, Fukong and Zhongtie agreed to arbitrate all disputes arising out of the agreement. A dispute arose concerning Fukong's repayment of the loan, and in 2018, Zhongtie initiated an arbitration proceeding with the Beijing Arbitration Commission ("Commission") against Fukong and Appellants. The Commission sent notice of the arbitration to Appellants at an address in China, but the notice was returned undelivered, stating that there had been a "recipient relocation" and that "no such person" resided at the delivery address. 2-ER-81–86. The Commission made no further attempt to contact Appellants and moved forward with the arbitration in their absence. A tribunal ("Tribunal") selected by the Commission issued an award in favor of Zhongtie. Zhongtie then filed a petition to confirm the arbitration award

1

("Petition") in the U.S. District Court for the Central District of California (Kato, J.).

Appellants opposed the Petition on two grounds under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"):  (1) they lacked notice of the arbitration proceedings, and (2) they never signed the agreements at issue, and thus did not agree to arbitrate, because their signatures were forged.  The district court confirmed the arbitration award, holding that Appellants had received constructive notice of the arbitration proceeding by virtue of the mailing to their former address.  The district court also held that any argument concerning forgery had been waived because it was not raised at the arbitration.  Both of these rulings are erroneous under binding precedent that the district court ignored.

*First*, the district court erred in holding that there was constructive notice. Courts uniformly recognize that there is proper notice, as required to enforce a foreign arbitral award, only if notice satisfies due process standards.  And the Supreme Court has held that due process standards are *not* satisfied where the only attempt at notice is a mailing that is returned as undelivered. *See Jones v. Flowers*, 547 U.S. 220, 238 (2006).  *Jones* is dispositive here, as the Commission undisputedly made no further effort to notify Appellants of the arbitration after learning that its mailing had not reached them.

2

*Second*, the district court erred in holding that Appellants waived the argument that they had not signed the agreements at issue by not raising the argument in the arbitration. The Supreme Court and this Court have held that the district court must decide whether an agreement to arbitrate exists. A party cannot be forced to arbitrate this predicate question. This Court has expressly recognized the applicability of this principle to the argument that Appellants make here—that their signatures were forged. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991). The district court subverted this principle—and the basic rule that arbitration is only a matter of consent—by holding that Appellants were required to present the forgery argument at an arbitration that they claim they never agreed to in the first place. In any event, there was plainly no waiver here given that Appellants had no notice of the arbitration and thus could not have presented the argument there.

Given that the district court order conflicts with well-established law, this Court should reverse or vacate the district court's order and judgment.

## **JURISDICTIONAL STATEMENT**

This Court has jurisdiction under 28 U.S.C. § 1291 because the district court entered judgment on January 12, 2024, 1-ER-2–9, and Appellants filed a notice of appeal on February 9, 2024, 3-ER-482.

## ISSUES PRESENTED

1.   Whether the district court erred in holding that notice was sufficient under the New York Convention and due process when the mailed notification of an arbitration proceeding was returned undeliverable and no further steps were taken to accomplish notice.

2.   Whether the district court erred in holding that a challenge to the existence of an arbitration agreement is waived if a party does not raise such a challenge at an arbitration proceeding, even where the party had no notice of that proceeding.

## STATEMENT OF THE CASE

### A.   The Parties

Appellants Jinggang Yan and Xiuhong Liang, a married couple, are lawful permanent residents of the United States, residing in California since early 2018. 2-ER-226 ¶¶3-4; 2-ER-237 ¶¶3-4. Appellants formerly resided in Shanghai, China, but left in January 2018 so that their three children would have access to better educational opportunities. 2-ER-226 ¶5; 2-ER-237 ¶5. Appellants have not returned to China since January 2018. 2-ER-226 ¶4; 2-ER-237 ¶4.

Appellee Zhongtie is a corporation organized under the laws of China, with its principal place of business located in Guangdong Province. 3-ER-349. Zhongtie is in the business of equity investments, debt investments, mezzanine investments, and private equity investments. *Id.*

4

**B.**     **The Underlying Loan Dispute**

On November 16, 2017, Zhongtie entered into a lending agreement with Fukong.  Under the terms of the agreement, Fukong borrowed RMB 30,000,000 from Zhongtie at an annual interest rate of 20 percent, with the loan term set to expire nine months after the date Zhongtie issued the loan principal.  3-ER-350–51. The loan also provided that any dispute between Zhongtie and Fukong was to be resolved by arbitration.  3-ER-351.

In accordance with the terms of the agreement, Zhongtie transferred the loan principal to Fukong on December 22, 2017.  *Id.*  Following the transfer of loan principal, a dispute arose between Zhongtie and Fukong concerning the parties' rights and obligations under the loan agreement.  3-ER-352.  Fukong failed to repay the loan under the terms of the agreement.  *Id.*

Zhongtie states that it entered into an agreement with Shanghai Zhongji Enterprise Group Co., Ltd. ("Zhongji") under which Zhongji "assumed joint and several liability for the Borrower [Fukong]."  3-ER-351.  For the first time in its reply brief below, Zhongtie stated that another, previously-unmentioned entity, Zhejiang Unifull Industrial Fibre Co., Ltd., also executed a "separate Performance Joint Liability Guaranty Letter."  2-ER-40.

### C.     The Forged "Personal Guarantees"

Zhongtie stated that in order to secure its rights as lender, Zhongtie "executed separate Performance Joint Liability Guarantee Letters [] with [Appellants] and the Corporate Parties." 3-ER-350. Zhongtie's Petition asserted that each Appellant executed a separate "personal guarantee"—specifically, each "affixed their personal seals and signatures to the respective Personal Guarantees." 3-ER-351. However, two months later, Zhongtie's reply brief contradicted this account, both in terms of the number of agreements and the form of execution. In reply, Zhongtie stated that "Respondents executed a joint guaranty and affixed their signatures to that guaranty – the document clearly shows that their personal seals were not affixed." 2-ER-40; *see also* 2-ER-60 ¶3 (declaration in support of reply stating that, with respect to the purported "guaranty," "the document clearly shows that [Respondents'] personal seals were not affixed").

In fact, neither Appellant signed or affixed a seal to any personal guarantee—joint, individually, or otherwise. 2-ER-34 ¶3; 2-ER-36 ¶3. Both Appellants submitted multiple sworn declarations attesting that they never signed the "personal guarantee" agreements asserted by the Petition. Appellant Yan was unequivocal that he "do[es] not recognize this alleged Guarantee and I did not sign

it." 2-ER-226 ¶2. Appellant Liang made the same denial. 2-ER-237 ¶2. [1] Appellants elaborated that they have never met the individual claiming to have met them and witnessed their execution of the purported personal guarantee agreement. 2-ER-36 ¶3 ("on November 16, 2017, I did not meet Mr. He or show him my original Chinese identity card"); 2-ER-34 ¶3 (similar denial by Appellant Liang).

### D. Zhongtie Initiates the First Arbitration Proceeding

On May 28, 2018, months after Respondents emigrated to the United States and never returned, Zhongtie initiated arbitration proceedings before the Commission. 3-ER-352. On July 17, 2018, Zhongtie transferred some of its interest in the loan, RMB 15,000,000, to a third party. *Id.* Pursuant to Zhongtie's agreement with the third party to which it transferred its interest, Zhongtie withdrew its arbitration request to the Commission, which "revoked" the matter on November 20, 2018. *Id.*

Zhongtie did not argue below that the Commission provided any notice to Appellants whatsoever regarding this first arbitration proceeding, and the record contains no evidence of any mailing directed to or other attempt to notify either Appellant of this arbitration. Both Appellants submitted sworn declarations that

---

[1] Appellants reiterated their strenuous denials with additional information in declarations attached to their proposed sur-reply. *See* 2-ER-36 ¶3 ("I did not sign the personal guarantee that Petitioner submitted to this Court. I do not understand why Mr. He, who claims to be a lawyer, would make such misrepresentations to this Court."); 2-ER-34 ¶3 (similar denial under penalty of perjury by Appellant Liang).

they received no notice of this arbitration and were entirely unaware of it. *See* 2-ER-227 ¶8; 2-ER-238 ¶8.

### E. Zhongtie Initiates the Second Arbitration Proceeding

On the same day the first arbitration was revoked (November 20, 2018), Zhongtie initiated a second arbitration proceeding against Fukong and Appellants concerning the other RMB 15,000,000 in principal. 3-ER-353. Appellants never received notice of this second arbitration. 2-ER-227 ¶8; 2-ER-238 ¶8. Zhongtie's evidence purporting to demonstrate notice on Appellants shows that several pieces of mail were sent to Appellants' prior address in China, which they had vacated and relocated from nearly a year earlier. 2-ER-81–86. Every one of these pieces of mail was returned as undeliverable, and stamped with language that read "Unknown new address after recipient relocation," "No such person at location," and "Return to Receiving and Sending Bureau." *Id.*

The arbitration went forward in Appellants' absence, with no further attempt to provide notice to Appellants after the mail was returned to the Commission. 2-ER-62. Following certain procedural developments, the Commission delivered a final award in favor of Zhongtie. 3-ER-354. Zhongtie was awarded RMB 15,000,000 in unpaid loan principal, RMB 5,316,700 in unpaid loan interest, 20 percent per annum in loan principal until the loan is repaid, and attorney fees and arbitration costs. *Id.* Appellants were found jointly and severally liable for the

8

amounts awarded by the arbitrators.  3-ER-355.

### F.    Zhongtie's Petition To Confirm The Arbitration Award

On March 28, 2022, Zhongtie filed a petition in the U.S. District Court for the Central District of California to confirm the arbitration award.  3-ER-468. On December 15, 2022, Zhongtie moved for default judgment.  On January 24, 2023, the district court denied the motion because Zhongtie failed to sufficiently show that it adequately served Appellants.

After Appellants were properly served and appeared, on November 28, 2023, Appellants filed their opposition to the petition.  2-ER-214.  On December 18, 2023, Zhongtie filed its reply.  2-ER-38.  On January 8, 2024, Appellants filed their proposed sur-reply to address evidence submitted by Zhongtie for the first time on reply.  2-ER-18.

### G.    The District Court's Order Granting the Petition

On January 12, 2024, without a hearing, the district court issued an order granting Zhongtie's Petition.  1-ER-4.  The court held that Appellants failed to meet their burden of establishing one of the seven defenses under the New York Convention.  1-ER-6–9.

The court rejected Appellants' argument that they had not received notice on the theory that they had received constructive notice of the arbitration proceedings by virtue of mail sent to their long-vacated prior address.  1-ER-7–8.  The court

9

reasoned that "[Appellants] [did] not assert they notified the Chinese government prior to the alleged move, hence, the Commission reasonably believed it was sending notice to the correct entity." 1-ER-8. The court did not acknowledge that these mailings sent to the Shanghai address were all returned undeliverable, or bore prominent stamps indicating the recipient had relocated and there was "no such person" at the location.

The court also rejected Appellants' argument that because they did not sign a personal guarantee, no agreement existed between either of them and Zhongtie. *Id.* The court relied on language from *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), stating that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* The court reasoned that because Appellants had constructive notice of the arbitration proceedings, they had waived any argument regarding the existence of the contract or the forgery of their signatures. *Id.*

On February 9, 2024, Appellants filed their notice of appeal. 3-ER-482.

## **SUMMARY OF ARGUMENT**

The district court erred in enforcing an award issued in an arbitration that Appellants had no notice of, based on agreements they did not sign. The New York Convention and the cases interpreting it recognize that courts should not enforce foreign arbitration awards where there is a lack of proper notice and lack

10

of an agreement to arbitrate. Both of these bases preclude enforcement of the award here.

**I.** The Commission's failure to notify Appellants of the arbitration makes the arbitration award unenforceable. Under the New York Convention, a foreign arbitration award should be confirmed only if there is "proper notice." Courts uniformly recognize that, to satisfy the proper notice requirement, notice must comply with due process. Under *Jones v. Flowers*, 547 U.S. 220 (2006), due process requires more than sending a letter that is returned undelivered. As the Supreme Court explained, no one who actually wanted to provide notice would do nothing after finding out that the mailing it sent did not reach the intended recipient. But that is exactly what the Commission did here. It sent notice to Appellants' old address in China, and then the mail was returned to the Commission, stating that Appellants were no longer at that location. Upon learning that the mailing did not reach Appellants, the Commission made no further effort to give notice to Appellants and simply conducted the arbitration in their absence. The district court did not mention *Jones*, which is directly on point, holding that this exact factual scenario—sending a letter, and then doing nothing when it is returned undelivered—does not satisfy due process.

**II.** The arbitration award is also unenforceable because Appellants did not sign the agreements to arbitrate. The district court concluded that Appellants

waived this argument because they did not present it to the arbitrators. This ruling conflicts with well-established law holding that whether a party agreed to arbitrate is a question for the court—and a party *cannot* be forced to arbitrate that question. As this Court explained: "To require the plaintiffs to arbitrate where they deny that they entered into the contracts would be inconsistent with the 'first principle' of arbitration that 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Three Valleys*, 925 F.2d at 1142 (cleaned up) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). Indeed, the reasoning is straight-forward: If a party did not agree to arbitrate, then it cannot be forced to arbitrate, and thus a court must decide the logically-prior question whether there was such an agreement in the first place.

Once again, the district court ignored this binding precedent, which is dispositive here. The district court's waiver ruling is predicated on the idea that Appellants were required to engage in an arbitration in order to argue that they never agreed to arbitrate. That is erroneous as a matter of law. It also fails to confront the fact that Appellants were unaware of the arbitration, and thus could not have waived anything in the arbitration. Because there was no waiver, as a legal or factual matter, the district court was required to resolve the factual dispute regarding whether, as Appellants attested in their declarations, the signatures are forgeries and they never signed the agreements.

## STANDARD OF REVIEW

This Court conducts *de novo* review of the district court's order confirming an arbitral award. *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009). While the merits of the underlying arbitration decision itself is not subject to this review, the determination whether a party "established a defense under the [New York] Convention" is subject to *de novo* review. *China Nat. Metal Prod. Imp./Exp. Co. v. Apex Dig., Inc.*, 379 F.3d 796, 799 (9th Cir. 2004). When a district court has made factual findings in support of its decision to confirm or deny confirmation of an arbitration award, those findings are reviewed for clear error. *Xuchu Dai v. E. Tools & Equip., Inc.*, 571 F. App'x 609, 610 (9th Cir. 2014).

## ARGUMENT

## I. THE DISTRICT COURT ERRED IN CONFIRMING THE AWARD BECAUSE THE LACK OF NOTICE OF THE ARBITRATION VIOLATED DUE PROCESS

### A. Notice Must Satisfy Due Process Under The United States Constitution In Order To Enforce The Arbitral Award

A foreign arbitral award is unenforceable, as a matter of law, if there is no proper notice of the arbitration. "Confirmation of foreign arbitration awards is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, known as the New York Convention." *Ministry of Def. & Support for the Armed Forces of the Islamic*

*Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1095 (9th Cir. 2011). "Recognition and enforcement of the award may be refused" when "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." New York Convention, Art. V, § 1(b). Thus, lack of proper notice is one of the recognized, specified grounds for refusing to enforce an arbitration award under the New York Convention. *See Ministry of Def. & Support*, 665 F.3d at 1096 n.2.

It is well-established that there is no "proper notice" under the New York Convention, and thus the award should not be confirmed, where notice fails to meet due process standards under the U.S. Constitution. As a sister circuit has held, with agreement from then-Judge Gorsuch: "To judge compliance with the New York Convention's 'proper notice' requirement, courts look to the forum's standards of due process." *CEEG (Shanghai) Solar Sci. & Tech. Co., Ltd v. LUMOS LLC*, 829 F.3d 1201, 1206 (10th Cir. 2016). Numerous courts are in accord. *See, e.g.*, *Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123, 1129-30 (7th Cir. 1997) (international "arbitral award should be denied or vacated if the party challenging the award proves that he was not given a meaningful opportunity to be heard as our due process jurisprudence defines it"); *Ma v. Fang*, 2022 WL 1078867, at *2 (C.D. Cal. Mar. 2, 2022) ("Federal courts have interpreted the New

York Convention's notice requirements to mean that service regarding a foreign arbitration proceeding must comply with federal due process." (citing cases)).

This Court's precedents confirm the point. In evaluating a challenge to notice under the New York Convention, the Court held: "In this context, 'proper notice' means notice that is reasonably calculated to apprise a litigant of arbitration proceedings." *Linley Invs. v. Jamgotchian*, 670 F. App'x 627, 628 (9th Cir. 2016). This is the exact standard required by due process and, indeed, this Court cited *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), the seminal due process notice case, for this proposition. *See id.* at 314. This Court also has explained the notice requirement in terms of due process rights: There are "safeguards in place to guard against enforcement of an otherwise unfair arbitration award. The Convention contains several due process protections requiring notice and the opportunity to be heard." *Ministry of Def. of Islamic Republic of Iran v. Gould Inc.*, 887 F.2d 1357, 1365 (9th Cir. 1989). More generally, this Court has recognized that due process limitations are necessarily embedded in the New York Convention, because if otherwise, it would raise serious constitutional concerns. *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1122 (9th Cir. 2002). In short, this Court follows the uniform precedent establishing that a foreign arbitration award is enforceable only if it meets due process requirements for giving notice of the arbitration.

**B.    Due Process Demands Further Attempts At Notice If Mail Is Returned As Undelivered**

The requirement for notice, in compliance with due process, is well-settled: "An elementary and fundamental requirement of due process in any proceeding . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. "[P]rocess which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315.

The Supreme Court has held specifically that the due process standard in *Mullane* is not satisfied where a mailed notice is returned as undelivered and the sender does nothing more. In *Jones*, the State of Arkansas sent two certified letters on different occasions to an individual to notify him of a tax delinquency. 547 U.S. at 223-24. The post office marked both unopened letters "unclaimed" and returned them to the State. *Id.* at 224. The Supreme Court held that this attempted notice did not satisfy the demands of due process: "Although the State may have made a reasonable calculation of how to reach Jones, it had good reason to suspect when the notice was returned that Jones was no better off than if the notice had never been sent. Deciding to take no further action is not what someone desirous of actually informing Jones would do; such a person would take further reasonable steps if any were available." *Id.* at 230.

16

Both before and after *Jones*, this Court has adopted the same rule: if mail is returned as undeliverable, and the sender does nothing more, then there is no constructive notice as a matter of due process. For instance, in *United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003), this Court held: "[W]hen initial personal notice letters are returned undelivered, the government must make reasonable additional efforts to provide personal notice. . . . If the DEA made no additional efforts to notify Horner after the first letter was returned undelivered, Horner did not have legally adequate notice of the impending forfeiture proceedings." *Id.* at 911. Similarly, in a case concerning recognition of a French judgment and a claimed lack of notice of the French proceedings, this Court held that while there was an attempt at service under the Hague Service Convention, "the absence of any confirmation of successful service signaled a problem. And the issuance of a certificate of non-service left no doubt that service had failed." *De Fontbrune v. Wofsy*, 39 F.4th 1214, 1232 (9th Cir. 2022). This knowledge of unsuccessful service "triggered an obligation to take any available and reasonable further steps to give notice," and (unless the party actually received notice) the attempted service did not suffice given the failure to take any such steps. *Id.* at 1232-33.

## C. The District Court's Holding Of Proper Notice Conflicts With Binding Precedent

The district court erred in holding that the Commission provided "proper notice" under the New York Convention by doing the same thing that

Arkansas had done in response to returned undeliverable mail: "nothing." *Jones*, 547 U.S. at 234.

*Jones*, *Ritchie*, and *De Fontbrune* are dispositive here. Just as in those cases, the sender of the notice received unequivocal proof that the attempted notice was unsuccessful because the mail was returned as undeliverable. In particular, the PRC Express Mail Service made marks on the mail sent to Appellants stating that Appellants had "relocat[ed]" and there was "no such person at location." 2-ER-81–86. This language coveys the unmistakable message that Appellants did not reside at the Shanghai address and had not received the mail that the Commission sent to that address.

Moreover, just as in *Jones*, *Ritchie*, and *De Fontbrune*, after receiving unequivocal proof that its mailing did not provide notice to Appellants because it never reached Appellants, the Commission did nothing more. The Commission had many reasonable, available steps it could have taken to attempt to provide notice. It could have attempted notice by publication. Or it could have attempted to provide notice through a family member, associate, or business connected to Appellants. The record is devoid of any indication that the Commission even considered such steps. But it is undisputed that the Commission took no further steps to notify Appellants of the arbitration. And doing nothing—even after learning that Appellants did not receive the mailed notice—does not satisfy due

process and thus does not constitute "proper notice" under the New York Convention.

The district court did not find that Appellants received actual notice. 1-ER-7. Indeed, a finding of actual notice would be impossible given that Zhongtie's own evidence shows that the mailing to Appellants was returned as undelivered. Appellants also attested, in declarations submitted along with their opposition briefs, that they did not receive actual notice. Specifically, both Appellants stated that "I was not served, in person or otherwise, with regard to either of the Beijing Arbitration Commission proceedings. Nor did I receive any mail or express delivery from anyone in connection with either arbitration proceeding. I had no notice of either arbitration proceeding." 2-ER-226 ¶8; 2-ER-237 ¶8.

The district court did not question these facts, but it nonetheless held that there was proper notice based on two facts: (1) "the Commission mailed notice of both hearings to Respondents' last known address"; and (2) "[t]he address was both listed on a publicly available document from the SSE, as well as Respondents' official Chinese government-issued IDs." 1-ER-7. Both fail as a matter of law.

*First*, as discussed above, the mailing to a last known address does not suffice where (as here) the mail is returned undelivered. The district court simply ignored that the Commission knew the mail had not been delivered. It also ignored

19

the binding case law that requires some greater effort to provide notice in this situation.

*Second*, the Supreme Court rejected the exact same argument in *Jones* regarding an obligation to keep an address updated. Arkansas claimed that "followup measures were not required" because notice had been "sent to an address that Jones provided and had a legal obligation to keep updated." *Jones*, 547 U.S. at 231. *Jones* rejected this argument, holding that the "failure to comply with a statutory obligation to keep [an] address updated" does not "forfeit[ ] [one's] right to constitutionally sufficient notice." *Id.* at 232. Although the statute requiring that the relevant address be kept current "provide[d] strong support" for the argument that mailing a certified letter to the address on file "was reasonably calculated" to provide notice, this did not change the unreasonableness of doing nothing *after* learning the mailed notice had failed. *Id.* Likewise, here, any supposed obligation for Appellants to keep their address current does not obviate the Commission's obligation to provide proper notice.

The two cases the district court cited in support of its holding are inapposite. Neither involved learning that attempted notice failed and doing zero in response to this new information—as in *Jones*, *Ritchie*, *De Fontbrune*, and here. In *Guarino v. Productos Roche S.A.*, 839 F. App'x 334 (11th Cir. 2020) (unpublished), the court recognized that notice under the New York Convention had to comply with

20

due process. *Id.* at 339. It did comply in that case because after notice by express mail failed, the arbitration center attempted notice by publication, email, and regular mail—and, notably, the email did *not* bounce back as undelivered. *Id.* at 340. In *Yukos Capital S.A.R.L. v. OAO Samaraneftegaz*, 963 F. Supp. 2d 289 (S.D.N.Y. 2013), attempted notice was deemed reasonable because the arbitration commission reasonably believed that the relevant party had successfully received notice by way of its representative, which participated in the arbitration and asserted a defense on the party's behalf. *Id.* at 297. In contrast, the arbitration award here expressly noted that Appellants "did not participate." 3-ER-319.[2]

In sum, the district court pointed to no authority that supports its holding that mailed notice returned undeliverable, indicating that notice had failed, constitutes proper notice consistent with due process. Indeed, if a failed mailing sufficed, it would encourage parties *not* to provide real notice, but rather to engage in one-sided arbitration proceedings around the world, with the excuse that a letter was provided to the other side's last known address, even if the mailing was returned

---

[2] The district court also mentions *Ma*, which it attempts to distinguish because, for one of the parties in that case, the government ID noted that the party had moved to the United States. 1-ER-7–8 (citing *Ma*, 2022 WL 1078867, at *4). However, for another party, the government ID did not suggest the address on file was wrong, but due process was satisfied only because after "unsuccessfully attempt[ing]" service at that address, the arbitration commission "continued its attempts to provide notice by also serving a representative" of the party. *Ma*, 2022 WL 1078867, at *4. Here, in contrast, there were no such continued attempts.

undelivered.  There is no precedent to support such a result under principles of due process or the New York Convention.

Finally, to the extent Zhongtie may argue that some of these arguments were raised in Appellants' proposed sur-reply, which the district court did not grant leave to file, that is irrelevant here for several reasons.  *First*, regardless of when arguments were raised in the district court, the court decided the issue of constructive notice, holding that the mailing alone sufficed.  1-ER-7–8.  Thus, regardless of when or how arguments were raised below, Appellants can challenge that ruling on appeal.  *See Petersen v. Boeing Co.*, 715 F.3d 276, 282 n.5 (9th Cir. 2013) ("Our waiver rules do not apply where, as here, the district court nevertheless addressed the merits of the issue not explicitly raised by the party.") (quotation marks omitted).[3]  And the evidence establishing that there was no constructive notice—the mail returned as undelivered—were attached as exhibits to *Zhongtie's own reply*, not the sur-reply.  *Second*, any supposed waiver here would be especially dubious because Zhongtie only raised its constructive notice theory in their reply brief.  2-ER-49–51.  In its Petition, Zhongtie argued actual

---

[3]    *See also, e.g.*, *F.D.I.C. v. Woodside Const., Inc.*, 979 F.2d 172, 174 (9th Cir. 1992) ("Galt claims that the FDIC has raised the issue of Galt's endorsement of the note for the first time on appeal.  If the district court resolved the issue, this court may consider it on appeal."); *see also Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469-70 (2000) (holding that there was no waiver where the issue was "considered and passed upon by the court below").

notice, Appellants responded by refuting actual notice, and then Zhongtie changed tack in reply. Appellants argued against constructive notice in sur-reply, the only time they could do so. Thus, far from a waiver, Appellants presented their arguments at the first opportunity. *Third*, while the district court denied leave to file the sur-reply, it appears to have done so only because it found the arguments unpersuasive, stating that it "need not rely on any of the issues raised in Respondents' proposed Sur-Reply." 1-ER-8 n.1. There is no reason to impute to the district court a finding that the sur-reply arguments should not be considered at all. *Fourth*, to the extent the district court order could be read as refusing to consider the arguments in sur-reply, it would be an abuse of discretion that this Court should reject. Appellants raised a new argument for constructive notice and put forward new evidence on this theory in their reply brief. 2-ER-41–43; 2-ER-49–51; 2-ER-59–63, 2-ER-76–87. Appellants have a right to respond to this new argument and evidence. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (A party may not "submit 'new' evidence in their reply without affording plaintiffs an opportunity to respond. Such a result would be unfair.").[4] *Finally*, while there was

---

[4]    *See also Moser v. Encore Cap. Grp., Inc.*, 455 F. App'x 745, 747 (9th Cir. 2011) ("The district court erred in relying on new evidence submitted by Encore while rejecting rebuttal evidence submitted by Moser. We have considered Moser's rebuttal evidence on appeal.") (citation omitted); *Henderson v. Bonaventura*, 649 F. App'x 639, 642 (9th Cir. 2016) ("The district court erred by considering these arguments after Appellees raised them in their reply brief and without giving Henderson an opportunity to respond."); *cf. Foss v. Rowen*,

no waiver, even if there were, the court's ruling is plain error, as it conflicts directly with binding precedent from the Supreme Court and this Court, all of which it ignores, as discussed above.

## II. THE DISTRICT COURT ERRED IN HOLDING THAT APPELLANTS' CHALLENGE TO THE EXISTENCE OF THE AGREEMENT WAS WAIVED BECAUSE IT WAS NOT RAISED IN THE ARBITRATION

### A. The Court Is Required To Decide Whether The Agreement Was Forged And Thus Whether The Award Is Unenforceable

The existence of an "agreement to arbitrate is a prerequisite to enforcing an arbitration award under the New York Convention." *Al-Qarqani v. Chevron Corp.*, 8 F.4th 1018, 1023 (9th Cir. 2021). As this Court has explained, without an agreement to arbitrate, there are two reasons why enforcement under the New York Convention would be improper. "First, article II of the Convention provides that signatory states will 'recognize an agreement in writing under which the parties undertake to submit [claims] to arbitration.' . . . Accordingly, without an agreement to arbitrate, the Convention does not provide for enforcement." *Id.* (quoting New York Convention, Art. II(1)). "Second, article V of the Convention bars enforcement of an award if the underlying arbitration agreement is invalid or the dispute is not arbitrable under the law of the country in which enforcement is

704 F. App'x 719, 720 (9th Cir. 2017) ("We reject as unsupported by the record Foss's contention that he was prejudiced by defendant raising new issues in the reply brief because Foss was given an opportunity to file a sur-reply brief.").

sought." *Id.* at 1023-24 (citing New York Convention, Art. V(1)(a), (2)(a)). And under United States law, "'[a]rbitration is strictly a matter of consent' and requires an agreement to arbitrate." *Id.* at 1024 (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 n.6 (2010)).

The question whether an agreement exists is one the court must decide. While a challenge to "the validity or enforcement of a putative contract mandating arbitration" may be resolved by an arbitrator, "challenges to the existence of a contract as a whole must be determined by the court." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007). And it is legal error for the district court to not "rule upon the contract formation issue" where a party "challenged the existence of a contract." *Id.*

The district court erred in suggesting that the forgery issue here is one for the arbitrator. 1-ER-8. The district court cited *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), for the proposition that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." 1-ER-8. But a claim that an agreement is forged is not a challenge to the agreement's "validity," but to whether there is an agreement at all. That is why *Buckeye* explained that "[t]he issue of the contract's validity is different from the issue of whether any agreement between the alleged obligor and obligee was ever concluded," and that its opinion "does not speak to the issue

decided in the cases . . . which hold that it is for courts to decide whether the alleged obligor ever signed the contract." *Buckeye*, 546 U.S. at 444 n.1. Subsequent opinions from the Supreme Court and this Court recognize and confirm this distinction. *See, e.g.*, *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 n.2 (2010) (citing *Buckeye* and reaffirming that "[t]he issue of the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded'"); *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022) ("Moyer's challenge to the Agreement as a whole for lack of acceptance and consideration—elements of contract *formation*—is thus a matter to be determined by a court."); *Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 635 (9th Cir. 2021) ("[W]here Ahlstrom challenged the very existence of an agreement to arbitrate, the district court was required to address Ahlstrom's challenge and determine whether an agreement existed."); *Sanford*, 483 F.3d at 962 n.8 (the Supreme Court "has specifically noted the distinction between the validity of the contract and the question whether any agreement was formed"); *see also Wang v. Kahn*, 2022 WL 36105, at *10 (N.D. Cal. Jan. 4, 2022) (when the party opposing arbitration contended that "he never signed the disputed agreements" and that certain documents were "forged," the "Court and not the arbitrator, must first determine whether the parties formed a contract."). In sum, courts uniformly hold

that a challenge to whether the agreement was signed is a challenge to the existence of the agreement itself, such that it must be decided by the court.

### B. A Party Does Not Waive The Argument That It Never Agreed To Arbitration By Not Attending The Arbitration

The district court erred in holding that by "fail[ing] to attend" the arbitration, Appellants waived the argument that they never signed any agreement to arbitrate. 1-ER-8. According to the court, even if the agreement was forged and thus nonexistent, Appellants were required to attend the arbitration to raise that argument. This theory is a *non sequitur* and violates basic legal principles.

A party cannot be forced to arbitrate the predicate question whether there was an agreement to arbitrate. Because an "arbitrator's jurisdiction is rooted in the agreement of the parties, a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the existence of an agreement to arbitrate. Only a court can make that decision." *Three Valleys*, 925 F.2d at 1140-41 (cleaned up). "To require the plaintiffs to arbitrate where they deny that they entered into the contracts would be inconsistent with the 'first principle' of arbitration that 'a party cannot be required to submit [to arbitration] any dispute which he has not agreed so to submit.'" *Id.* at 1142 (quoting *AT&T Techs.*, 475 U.S. at 648); *see also Camping Constr. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1340 (9th Cir. 1990) ("The court must determine whether a contract ever existed; unless that issue is decided in favor of

27

the party seeking arbitration, there is no basis for submitting any question to an arbitrator.").

Indeed, this Court expressly described the situation here as the prototypical case where a party *cannot* be required to arbitrate. It would be "untenable" if "[p]arty A could forge party B's name to a contract and compel party B to arbitrate the question of the genuineness of its signature." *Three Valleys*, 925 F.2d at 1140. Similarly, in a case where the district court concluded that a party had waived its challenge to the enforceability of an arbitration agreement, this Court reversed because the party had "raised a genuine issue of material fact by submitting a sworn declaration denying that the parties had entered into a written agreement." *GIB, LLC v. Salon Ware, Inc.*, 634 F. App'x 610, 611 (9th Cir. 2016). Numerous cases are in accord.[5]

The district court's waiver ruling runs headlong into these precedents. If not attending an arbitration means that a party waives the argument that it did not sign

---

[5] *See, e.g.*, *Wang*, 2022 WL 36105, at *11 (where party argued "he never signed the disputed agreement," precedent requires that "the Court and not the arbitrator, must first determine whether the parties formed a contract"); *Gennarelli v. Charter Commc'ns, Inc.*, 2021 WL 4826612, at *3 (C.D. Cal. Apr. 22, 2021) (where a party contests the making of a contract containing an arbitration provision, the party cannot be compelled to arbitrate); *Shultz v. TTAC Publ'g, LLC*, 2020 WL 6937818, at *3 (N.D. Cal. Oct. 26, 2020) (where party challenged the existence of the agreement, analyzing and ruling on whether the parties entered into an agreement because challenges to the existence of the contract are the purview of the court).

the agreement, then the party is forced to attend the arbitration. But a party cannot be forced to attend an arbitration to which it did not agree. A district court addressing this precise waiver issue explained the point succinctly: If "the parties did not enter into an agreement to arbitrate their dispute," then the "agreement to arbitrate was not valid," and thus the defendant's "failure to appear before [the tribunal] cannot constitute waiver." *Arb. Between Exceed Int'l Ltd. v. DSL Corp.*, 2014 WL 1761264, at *9 & n.29 (S.D. Tex. Apr. 30, 2014). And, as discussed above, it is a question for the court whether there was, in fact, an agreement to arbitrate. There is no precedent or logical support for a court evading that question by holding that it first had to be raised to the arbitrator. Indeed, this Court has rejected the creation of a new waiver principle not found in the New York Convention. *See Al-Qarqani*, 8 F. 4th at 1026 (9th Cir. 2021) ("[W]e reject the heirs' contention that Chevron is precluded from resisting enforcement of the award because it did not first appeal to the arbitral tribunal or move to vacate the award. . . . But neither the New York Convention nor its implementing statute contains such a rule.").

Finally, the court's waiver ruling is especially problematic because, as discussed above, Appellants were not aware of the arbitration at all. "Where waivers are permissible, they are often enforced only if the waiver was knowing or intelligent, which means the individual has sufficient awareness of the relevant

29

circumstances and likely consequences of his decision." *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1170-71 (9th Cir. 2006) (quotation marks omitted). Even putting aside the question whether there was "proper notice" under the New York Convention, the evidence establishes that there was no *actual* notice. *See supra* at 8, 18. Because Appellants did not know about the arbitration, they could not and did not knowingly choose to waive the argument that they had not agreed to arbitrate because they did not sign the agreements.

### C. There Must Be A Hearing Or Jury Trial To Resolve The Factual Dispute Over Whether Appellants Signed The Agreements

The district court was required to conduct a hearing or jury trial to decide whether there was an agreement to arbitrate or whether the signatures were forged and there was no agreement at all. This Court has held: "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Three Valleys*, 925 F.2d at 1141 (quotation marks omitted). Accordingly, district courts in this circuit consistently recognize that they must conduct a hearing or jury trial to resolve this issue. *See, e.g.*, *Wang*, 2022 WL 36105, at *12 (on the issue of forgery, "the parties' versions of events, supported by evidence, are diametrically opposed and thus require an evidentiary hearing or a jury trial to resolve"); *Gonzalez v. Food Mgmt. Partners, Inc.*, 2020 WL 4437267, at *2-4 (C.D. Cal. Aug. 3, 2020) (when competing declarations disputed whether

parties signed the relevant agreement, and these declarations raise credibility questions, a limited jury trial would be held to determine "whether the parties formed a binding arbitration agreement"); *Chime Inst. v. Haney*, 2013 WL 12114616, at *4 (C.D. Cal. Oct. 28, 2013) (when there was a factual dispute regarding whether the relevant agreement containing the arbitration clause was ever signed, ordering a limited jury trial and limited discovery into the question).

Here, there is a factual dispute regarding whether Appellants signed the agreements, and thus whether they agreed to arbitrate any dispute with Zhongtie. Appellants declared unequivocally that they did not sign the agreements and that their signatures on the agreements were forged. 2-ER-34; 2-ER-36; 2-ER-226; 2-ER-237. Zhongtie initially asserted that "Respondents affixed their personal seals and signatures to the respective Personal Guarantees." 3-ER-257; 3-ER-351. However, there are conspicuously *no seals* anywhere on the purported "respective Personal Guarantees"; indeed, there are not "respective" guarantees at all—there is one document. *See* 3-ER-283 (Ex. B to Amended Wu declaration in support of amended Petition). Accordingly, in reply, Zhongtie conceded that "the document [singular] clearly shows that their personal seals were not affixed." 2-ER-40. In any event, Zhongtie contends that the signatures are genuine, but produces no evidence in support beyond the declaration of Zhongtie's own lawyer, with

suspiciously precise details concerning events from more than six years ago. 2-ER-23–24.

The district court did not attempt to resolve this factual dispute regarding whether the signatures were forged. In the preliminary section of the order, the court briefly quoted the Petition's statement that "Respondents affixed their personal seals and signatures to the respective Personal Guarantees." 1-ER-5 (quoting Petition ¶13). If the court had adopted as fact this statement from the Petition, that would be clear error because (as discussed above) Zhongtie abandoned that statement, the document on its face has no seals, and there is an unresolved factual dispute regarding the genuineness of the signatures. But the court did not suggest it was actually adopting this statement as fact. Instead, its only reasoning in rejecting the forgery argument was supposed waiver. 1-ER-8 ("[A]ny challenges related to the validity of the contract – namely, forgery – fails as it was not raised in arbitration."). And, as discussed above, its waiver ruling is erroneous as a matter of law.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should reverse or vacate the order and judgment of the district court.

Respectfully submitted,

Dated:  April 25, 2024          By:  */s/  David M. Cooper*
David M. Cooper
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000

William R. Sears
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone:  (213) 443-3000

*Counsel for Respondents-Appellants*

## <u>REQUEST FOR ORAL ARGUMENT</u>

Appellants respectfully request that this Court hear oral argument in this appeal.

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Appellants state that they are not aware of any related cases pending in this Court.

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(a)(7) and Circuit Rule 32-1, the foregoing opening brief is in 14-point, proportionally spaced Times New Roman type and contains 7,691 words.

Dated:  April 25, 2024          <u>  */s/  David M. Cooper*         </u>
David M. Cooper

*Counsel for Respondents-Appellants*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Brief for Appellants with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: April 25, 2024        _/s/ David M. Cooper_
                                  David M. Cooper

                                  *Counsel for Respondents-Appellants*