**Docket No. 24-736**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

ZHONGTIE DACHENG (ZHUHAI) INVESTMENT MANAGEMENT CO LTD,

*Petitioner - Appellee,*

v.

JINGGANG YAN; LIANG XIUHONG,

*Respondents - Appellants.*

*Appeal from a Decision of the United States District Court for the Central District of California,*
*No.* 8:22-cv-00461-KK-ADS · *Honorable Kenly Kiya Kato*

# APPELLEE'S ANSWERING BRIEF

Daniel T. Pascucci
Kaitlin R. Walsh
Emily Kanstroom Musgrave
Michael J. Godwin
MINTZ LEVIN COHN FERRIS
  GLOVSKY AND POPEO, P.C.
Century Plaza Towers
2049 Century Park East, Suite 300
Los Angeles, California 90067
(858) 314-1500
dtpascucci@mintz.com
krwalsh@mintz.com
ekmusgrave@mintz.com
mjgodwin@mintz.com

*Attorneys for Appellee Zhongtie Dacheng*
*(Zhuhai) Investment Management Co., Ltd.*



COUNSEL PRESS · (213) 680-2300

PRINTED ON RECYCLED PAPER



## CORPORATE DISCLOSURE STATEMENT

The parent corporation of Zhongtie Dacheng (Zhuhai) Investment Management Co., Ltd., is Zhongtie Zhongji Supply Chain Group Co., Ltd. Qingdao Jingbei Business Management Co., Ltd., is the majority shareholder of Zhongtie Dacheng (Zhuhai) Investment Management Co., Ltd.

Date: August 12, 2024

> MINTZ LEVIN COHN FERRIS
> GLOVSKY AND POPEO, P.C.
>
> /s/ Kaitlin R. Walsh
> Daniel T. Pascucci
> Kaitlin R. Walsh
> Emily Kanstroom Musgrave
> Michael J. Godwin
>
> *Attorneys for Appellee Zhongtie Dacheng*
> *(Zhuhai) Investment Management Co., Ltd.*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................1

COUNTERSTATEMENT OF ISSUES PRESENTED..........................................6

STATEMENT OF THE CASE...............................................................................7

      A.     The Parties..................................................................................7

      B.     The Underlying Loan Dispute...................................................8

      C.     Appellants Abscond to the United States and Fail to Update Their Address of Record in Violation of Chinese Law ......................10

      D.     The Arbitrations .....................................................................11

      E.     The Award ................................................................................14

      F.     The Proceedings Below............................................................15

SUMMARY OF ARGUMENT .............................................................................18

STANDARD OF REVIEW ..................................................................................21

ARGUMENT .......................................................................................................26

I.     APPELLANTS FAIL TO MEET THEIR SUBSTANTIAL BURDEN OF ESTABLISHING A DEFENSE TO CONFIRMATION OF THE ARBITRAL AWARD BASED ON LACK OF PROPER NOTICE ............26

      A.     The District Court Correctly Determined that Proper Notice Under the Convention Requires Notice that is "Reasonably Calculated" to Apprise a Litigant of Arbitration Proceedings and Appellants Received Proper Notice Here....................................27

      B.     The District Court's Findings of Fact Strongly Suggest That Appellants Received Proper Notice Via Alternative Means..............34

      C.     Appellants Fail to Meet Their Substantial Burden to Raise a Defense Based on Lack of Due Process................................................39

1. Appellants' Reliance on *Jones v. Flowers* Is Misplaced ..........39

2. Appellants Fail to Identify Any Other Case Law That Dictates a Contrary Result .......................................................42

3. Appellants' Intentional Avoidance of the Arbitration Proceeding Is Not a Defense.....................................................43

II. APPELLANTS FAIL TO MEET THEIR SUBSTANTIAL BURDEN OF ESTABLISHING A DEFENSE TO CONFIRMATION OF THE ARBITRAL AWARD BASED ON CHALLENGES TO THE VALIDITY OF THE CONTRACT.................................................................45

A. The District Court Appropriately Found That Appellants Waived Challenges to the Personal Guarantee's Validity by Failing to Raise Them in Connection with the Arbitration.................46

B. The Court Should Reject Appellants' Attempt at Collateral Litigation that Would Eviscerate the Purpose and Policies of the Convention ............................................................................52

C. Even if the Forgery Defense Had Not be Waived and Could be Raised for the First Time in a Court of Secondary Jurisdiction, Appellants Cannot Meet Their Burden of Establishing a Triable Issue of Fact............................................................................54

CONCLUSION .......................................................................................60

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ahlstrom v. DHI Mortg. Co.*, *L.P.*,
    21 F.4th 631 (9th Cir. 2021) ...............................................................48

*Anderson v. City of Bessemer, N.C.*,
    470 U.S. 564 (1985)............................................................................25

*Aperture Media Partners LLC v. Burmester, Duncker & Joly GmbH
    & Co. KG*,
    2022 U.S. Dist. LEXIS 181029 (C.D. Cal. Sept. 30, 2022) ...............23

*Belship Navigation, Inc. v. Sealift, Inc.*,
    1995 U.S. Dist. LEXIS 10541 (S.D.N.Y. July 27, 1995)............................22, 53

*Bernstein Seawell & Kove v. Bosarge*,
    813 F.2d 726 (5th Cir. 1987) ...............................................................43

*Brewster v. Wachovia Mortg.*,
    699 Fed. Appx. 705 (9th Cir. 2017).................................................38, 59

*Buckeye Check Cashing, Inc., v. Cardegna*,
    546 U.S. 440 (2006)............................................................................48

*Castro v. Tri Marine Fish Co. LLC*,
    921 F.3d 766 (9th Cir. 2019) ..........................................................23, 24

*Chastain v. Robinson-Humphrey Co.*,
    957 F.2d 851 (11th Cir. 1992) .............................................................56

*Chime Inst. v. Haney*,
    2013 U.S. Dist. LEXIS 202944 (C.D. Cal. Oct. 28, 2013) .................57

*China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc.*,
    379 F.3d 796 (9th Cir. 2004) ..........................................................23, 25

*De Fontbrune v. Wofsy*,
    39 F.4th 1214 (9th Cir. 2022) ..............................................................42

iv

*Europcar Italia, S.P.A. v. Maiellano Tours*,
  156 F.3d 310 (2d Cir. 1998) .............................................................................46

*Exceed Int'l Ltd. v. DSL Corp.*,
  2014 U.S. Dist. LEXIS 59913 (S.D. Tex. Apr. 30, 2014)...........................49, 50

*Finley v. Fax*,
  683 Fed. Appx. 630 (9th Cir. 2017).....................................................................59

*FTC v. Publ'g Clearing House, Inc.*,
  104 F.3d 1168 (9th Cir. 1997) ............................................................................56

*Gennarelli v. Charter Commc'ns, Inc.*,
  2021 U.S. Dist. 207160 (C.D. Cal. Apr. 22, 2021) .............................................48

*Geotech Lizenz AG v. Evergreen Sys., Inc.*,
  697 F. Supp. 1248 (E.D.N.Y. 1988) ....................................................................44

*GIB, LLC v. Salon Ware, Inc.*,
  634 F. App'x 610 (9th Cir. 2016).........................................................................57

*Gonzales v. Food Mgmt. Partners, Inc.*,
  2020 U.S. Dist. LEXIS 137848 (C.D. Cal. Aug. 3, 2020) ..................................57

*Guarino v. Productos Roche S.A.*,
  839 F. App'x 334 (11th Cir. 2020).................................................................28, 32

*Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GmbH*,
  921 F.3d 1291 (11th Cir. 2017) ..........................................................................36

*Jones v. Flowers*,
  547 U.S. 220 (2006).......................................................................................*passim*

*Jones v. GMC*,
  640 F. Supp. 2d 1124 (D. Ariz. 2009) .................................................................54

*Karaha Bodas Co. v. Negara*,
  335 F.3d 357 (5th Cir. 2003) ..............................................................................24

*Lentini v. Cal. Ctr. for the Arts, Escondido*,
  370 F.3d 837 (9th Cir. 2004) ..............................................................................25

*Linley Invs. v. Jamgotchian*,
670 Fed. Appx. 627 (9th Cir. 2016)............................................................*passim*

*Ma v. Fang*,
2022 U.S. Dist. LEXIS 67934 (C.D. Cal. 2022 Mar. 2, 2022)..................*passim*

*Ministry of Def. & Support v. Cubit Def. Sys., Inc.*,
665 F.3d 1091 (9th Cir. 2011) ...........................................................22, 52

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)...........................................................................22, 52

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950)..........................................................................*passim*

*Muniz v. UPS*,
738 F.3d 214 (9th Cir. 2013) ....................................................................37

*New Frontier Inv. AG v. BitCenter, Inc.*,
2024 U.S. Dist. LEXIS 20754 (N.D. Cal. Feb. 6, 2024) .................................23

*Overseas Cosmos v. NR Vessel Corp.*,
1997 U.S. Dist. LEXIS 19390 (S.D.N.Y. Dec. 8, 1997) ...............................43

*Pagaduan v. Carnival Corp.*,
830 Fed. Appx. 61 (2d Cir. Nov. 25, 2020)................................................24

*Reichert v. Rapid Invs., Inc.*,
56 F.4th 1220 (9th Cir. 2022) ..................................................................48

*Research & Dev. Ctr. "Teploenergetika," LLC v. EP Int'l, LLC*,
182 F. Supp. 3d 556 (E.D. Va. 2016) ........................................................46

*Scherk v. Alberto-Culver Co.*,
417 U.S. 506 (1974)....................................................................22, 52, 53

*Sundquist v. Ubiquity, Inc.*,
2017 U.S. Dist. LEXIS 186667 (S.D. Cal., Jan. 17, 2017) .............................56

*Synergy Homecare Franchising, LLC v. Aviatech, LLC*,
2013 U.S. Dist. LEXIS 202823 (D. Ariz. Mar. 12, 2013)................................56

*Telenor Mobile Commc'ns AS v. Storm LLC*,
584 F.3d 396 (2d Cir. 2009) ........................................................*passim*

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
925 F.2d 1136 (9th Cir. 1991) ...............................................48

*Tianjin Port Free Trade Zone Int'l Trade Serv. Co. v. Tiancheng Chempharm Inc. USA*,
2018 U.S. Dist. LEXIS 90106 (E.D.N.Y. May 30, 2018) ................................. 47

*Tianjin Port Free Trade Zone Int'l Trade Serv. Co. v. Tiancheng Int'l, Inc. USA*,
2018 U.S. Dist. LEXIS 160390 (C.D. Cal. Sept. 18, 2018) ...........27, 46, 47

*Traf Intercontinental Elektronik-Handels GmbH v. Sonocine, Inc.*,
2019 U.S. Dist. LEXIS 29375 (D. Nev. Feb. 25, 2019) ..............................29, 36

*U.S. v. Hinkson*,
585 F.3d 1247 (9th Cir. 2009) ...............................................25

*U.S. v. Marubeni Corp.*,
592 Fed. Appx. 642 (9th Cir. 2015) .........................................24

*U.S. v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ................................................43

*Wal-Mart Stores, Inc. v. PT Multipolar Corp.*,
1999 U.S. App. LEXIS 31578 (9th Cir. Nov. 30, 1999) ....................................30

*Wang v. Kahn*,
2022 U.S. Dist. LEXIS 1536 (N.D. Cal. Jan. 4, 2022) ................................49, 57

*Wong to Yick Wood Lock Ointment v. Madison One Acme*,
2015 U.S. Dist. LEXIS 200372 (C.D. Cal. Apr. 21, 2015) ..............................58

*Woods v. Saturn Dist. Corp.*,
78 F.3d 424 (9th Cir. 1996) ..........................................25, 30, 58

*Yukos Capital S.A.R.L. v. OAO Samaraneftegaz*,
963 F. Supp. 2d 289 (S.D.N.Y. 2013) ....................................33, 34, 43

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*,
126 F.3d 15 (2d Cir. 1997) .........................................23, 25

**Statutes and Treaties**

Regulations of the People's Republic of China on Household
Registration,
1958 China Law LEXIS 34 ...........................................................................11, 12

Law of the People's Republic of China on Resident Identity Cards,
2011 China Law LEXIS 3493 ...........................................................................11

Convention on the Recognition and Enforcement of Foreign Arbitral
Awards (New York, 10 June 1958) ...........................................................*passim*

UNCITRAL Model Law on International Commercial Arbitration
(December 4, 2006) ...........................................................................29

**Other Authorities**

Arbitration Rules of the Beijing Arbitration Commission ............................*passim*

## INTRODUCTION

Appellee, Zhongtie Dacheng (Zhuhai) Investment Management Co., Ltd., ("Zhongtie" or "Appellee"), obtained confirmation of a foreign arbitral award against Appellants Yan Jinggang ("Yan") and Liang Xiuhong ("Liang," and together with Yan, "Appellants") pursuant to the New York Convention on the Recognition and Enforcement of Arbitral Awards (the "Convention") in the United States District Court for the Central District of California (the "District Court"). The District Court, sitting in secondary jurisdiction, properly recognized that confirmation of a foreign arbitral award is a "summary proceeding," not meant to involve complex factual determinations other than a determination of whether Appellants have met their "substantial" burden of proving one of seven narrowly interpreted defenses enumerated in Article V of the Convention. The District Court analyzed the two defenses Appellants asserted, and correctly determined that Appellants failed to meet their "substantial" burden.

This dispute arises from an unpaid loan and related guarantee by Appellants, which were subject to mandatory arbitration provisions in China. Consistent with its own rules and applicable Chinese law, the arbitration commission mailed notice to Appellants on numerous occasions to their only publicly available address. However, Appellants had fled the country in the wake of a securities investigation without updating their address with the Chinese government, in violation of Chinese

law.  Accordingly, by Appellants' design, the arbitration commission did not have an address for Appellants to which it could send the notice.  Appellants failed to appear, and the arbitration proceeded against the borrower under the loan agreement with Appellants *in absentia.*  The borrower, which the District Court recognized was a company Appellant Yan controlled, participated in the arbitration.  The Tribunal ultimately found the borrower liable to Appellee for amounts owing under the loan and found Appellants jointly and severally liable pursuant to their personal guarantee.  Having made the decision not to participate in the arbitration and to evade proceedings related to their financial obligations, Appellants asked the District Court, and now ask this Court, to reward their misconduct by denying confirmation of the arbitration award.

Appellants assert two defenses to confirmation of the award: (1) lack of proper notice and (2) that their signature on the guarantee was forged.

Appellants' notice defense fails for two reasons.  *First*, the District Court appropriately held that "proper notice," rather than "actual notice," is required to comply with United States federal due process standards, and the notice of the arbitration sent to Appellants was "proper," because it was "reasonably calculated" to apprise them of the arbitration.  *Second*, even if the Commission's multiple notices mailed to Appellants' only known address did not comply with due process (they did), the District Court made findings of fact that strongly suggest that Appellants

2

received proper notice of the proceedings through alternative means. Those findings provide the Court an independent basis to affirm. Specifically, the District Court found that: (1) Appellant Yan is the sole director and shareholder of Shanghai Fukong Interactive Entertainment Co. Ltd. ("Borrower") and Zhongji Enterprise Group Co., Ltd. ("Zhongji"); and (2) Borrower received notice of the arbitration and participated in the proceedings. Thus, not only did the Commission mail notice to Appellants' only known address consistent with its rules and procedures, but the District Court found that notice was provided to an entity controlled by Appellant Yan which participated in the arbitration. These findings of fact may only be reversed for clear error, and Appellants have made no showing that these factual findings were erroneous.

The District Court also properly rejected Appellants' forgery defense, which fails for three independent reasons. *First*, the District Court correctly found that Appellants waived their forgery defense by failing to object to the proceedings until after the award was rendered despite receiving proper notice of the arbitration. *Second*, Appellants' attempt to raise their forgery allegation for the first time in response to enforcement of the arbitral award is an improper attempt at collateral litigation that is precluded by the Convention. *Third*, even if the defense was not waived and the Convention did not preclude such collateral litigation, Appellants

failed to proffer any competent evidence sufficient to raise a triable issue of fact as to their forgery claim.

The District Court properly held that Appellants were required to raise any challenges to the validity of the personal guarantee in connection with the arbitration proceeding. Despite receiving proper notice, Appellants failed to challenge the existence of the contract or the authority of the arbitration commission. Accordingly, their argument that the personal guarantee was fraudulent is waived.

Appellants' attempt to inject the forgery defense into these proceedings for the first time in response to recognition and enforcement is an improper attempt at collateral litigation. The narrow review authorized by the Convention precludes such tactics. Confirmation of an arbitral award under the Convention is intended to be a "summary proceeding" that eschews complex factual determinations. The District Court's ruling was made within the context of an arbitral dispute governed by the Convention, and the Court's review of that order is informed by the same policies and principles that animate that treaty.

The Convention was established to instill confidence in the foreign arbitral process and promote reciprocity among signatory countries. Accordingly, the standard of review applicable to a foreign arbitral award is extremely deferential— the district court does not consider the underlying merits of the arbitration and instead focuses on whether the party seeking to overturn the award meets its burden

of pleading one of the Convention's narrowly interpreted defenses. This Circuit has routinely described this burden as necessarily "substantial." It exists to ensure treaty signatories adhere to the Convention's goals of promoting international comity and reciprocal recognition of foreign arbitral awards. The centrality of reciprocity under the Convention is precisely why courts are loath to permit the type of second-guessing of an arbitration ruling Appellants propose here. Permitting Appellants to overturn the arbitral award would provide a blueprint for similarly situated parties to engage in delay tactics antithetical to the Convention's mandate.

The District Court conducted a "summary proceeding" consistent with the Convention's mandate, pursuant to which the Court reviewed the record and considered evidence without a hearing and made reasonable findings of fact. Notably, this record included evidence that claiming forgery to shirk responsibility for his debts is straight out of Appellant Yan's playbook, as he had made a similar (unsuccessful) attempt in a Chinese court before. Appellants failed to meet their "substantial" burden to raise a viable defense to the award's enforcement by neglecting to present any evidence, aside from self-serving declarations, that would indicate the guarantee was forged. The law is clear that such conclusory statements are insufficient to create a genuine issue of fact, let alone meet Appellants' "substantial" burden to demonstrate that the guarantee was invalid. By contrast, Appellee provided actual evidence that countered Appellants' baseless allegations

of forgery and proved the signatures valid. Considering the evidence submitted by both parties, the District Court properly made the factual finding that Appellants affixed their signatures to a guarantee in which they assumed joint and several liability for a loan Appellee provided Borrower, an entity controlled by Appellant Yan. Appellants failed to carry their burden to demonstrate this finding was clearly erroneous.

The District Court did not err. Appellants have not met their "substantial" burden of establishing a defense provided in the Convention. The Court should affirm the order and judgment of the District Court.

## <u>COUNTERSTATEMENT OF ISSUES PRESENTED</u>

1.  Whether Appellants met their substantial burden under the Convention to show that they were not given proper notice of the arbitration where (a) notice of the arbitration proceeding was sent on multiple occasions to Appellants' only known address, an address which Appellants failed to update following their flight from the People's Republic of China ("China"), in violation of applicable Chinese law; and (b) a corporate entity owned and controlled by Appellant Yan actively participated in the arbitration.

2.  Whether Appellants can collaterally attack the arbitration award by raising, for the first time, a claim of forgery in the underlying agreement before a court

sitting in secondary jurisdiction on a petition for recognition and enforcement after receiving proper notice and failing to attend the arbitral proceedings.

3.    Whether Appellants met their substantial burden under the Convention to establish their forgery defense by submitting only Appellants' self-serving statements which were refuted by eyewitness testimony.

## STATEMENT OF THE CASE

### A.    The Parties

Appellants are permanent residents of the United States, who began residing in California on or around February 2, 2018.  2-ER-226 ¶¶ 3-4; 2-ER-237 ¶¶ 3-4. Appellants formerly resided in Shanghai, China, but left on or around January 23, 2018 in the wake of rapidly mounting financial, criminal, and legal liabilities.  2-ER-64-75.  Appellants have not returned to China since January 23, 2018.  2-ER-226 ¶ 4; 2-ER-237 ¶ 4.  Appellants never disclosed that they had permanently relocated from China to any governmental body or other authority, and notably, did not update their permanent address.  *See* 2-ER-227 ¶ 9; 2-ER-238 ¶ 9; 1-ER-8.

Appellee is a corporation organized under the laws of China, with its principal place of business in Guangdong Province.  3-ER-349.  Appellee is in the business of equity investments, debt investments, mezzanine investments, and private equity investments.  *Id.*

7

**B.  The Underlying Loan Dispute**

Appellee and Borrower entered into a loan agreement on November 16, 2017 (the "Loan").  2-ER-40; 3-ER-270-77.  Pursuant to the Loan, Borrower borrowed RMB 30,000,000 from Appellee at an annual interest rate of 20%.  3-ER-270.  On the same day, Zhongji, (together with Appellants, the "Guarantors"), and Zhejiang Unifull Industrial Fibre Co., Ltd. ("Unifull"), executed separate Performance Joint Liability Guarantee Letters (the "Guaranties") with Appellee.  3-ER-282-84. Specifically, Appellants executed a Letter of Guarantee for Joint and Several Liability of Performance and affixed their signatures to that guarantee (the "Personal Guarantee").  *Id.*  Pursuant to the Personal Guarantee, Appellants assumed joint and several liability for Borrower's obligations under the Loan.  3-ER-282 ¶1; 1-ER-5.

At all relevant times, Appellant Yan was the actual controller of Borrower and Unifull and held 95% of the equity of Zhongji.  1-ER-5; *see also* 2-ER-126-27 ¶¶18, 19.  Appellee submitted evidence of Appellant Yan's control of these entities in the form of, among other things, two announcements, one by the Chinese Securities Regulatory Commission ("CSRC") and one by Unifull:

- A May 17, 2017 announcement from Unifull stating that "the actual controller of Unifull Shares" would change from "Mr. Jiang Yong to [Appellant Yan]" and that Appellant Yan held a 95% equity interest in Zhongji, which itself owned a 100% stake in its subsidiary Suzhou Zhengyue Investment

Management Co., Ltd. ("Suzhou Zhengyue"). 2-ER-135-36; *see also* 2-ER-179; 2-ER-186; 2-ER-199-200 (Shanghai First Intermediate People's Court, Civil Judgment, dated April 1, 2021, listing Appellant Yan as legal representative of Borrower).

- A November 24, 2021 CSRC decision stating that Appellant Yan was "the controlling shareholder and actual controller of [Borrower] . . . from December 13, 2013 to April 17, 2017, and the actual controller of [Borrower] from April 18, 2017 to the close of the investigation" on November 24, 2021. 2-ER-146. The decision also states that Appellant Yan was "the actual controller of [Unifull] from May 11, 2017" through November 24, 2021. *Id*.

Upon reviewing this evidence, the District Court properly found that Appellant Yan was the "sole director and shareholder" of Borrower and Zhongji. 1-ER-5.

Borrower breached the Loan by failing to pay the interest in accordance with the terms of the Loan, and ultimately failed to repay the principal of the Loan when it came due. 3-ER-424. Consequently, Appellee was forced to exercise its rights pursuant to the dispute resolution clauses in the Loan and Guaranties, including the Personal Guarantee, and commenced arbitration against Borrower and Appellants.

C.     **Appellants Abscond to the United States and Fail to Update Their Address of Record in Violation of Chinese Law**

On or about January 19, 2018, three affiliates of Appellant Yan and Zhongji publicly announced that assets owned by both Zhongji and Yan, including all the equity Yan held in these entities, had been seized and frozen by several courts in China due to violations of securities laws and regulations (the "Seizure Announcement"). 2-ER-65-70. According to the Seizure Announcement, on January 17, 2018, the CSRC had initiated a formal investigation against Appellant Yan due to violations of securities laws and regulations (the "Securities Investigation"). 2-ER-65. As noted above, the Securities Investigation concluded as of November 24, 2021 and Appellant Yan was the actual controller of Borrower until that time. *Id*.

Six days after the commencement of the Securities Investigation, and four days after the Seizure Announcement, Appellants fled China and took up permanent residence in the United States. 2-ER-226 ¶ 3; 2-ER-237 ¶ 3. Appellants failed to update any Chinese governmental authority regarding their relocation in violation of the Regulations of the People's Republic of China on Household Registration (the "HRR"). *See* 1958 China Law LEXIS 34. The HRR requires all Chinese citizens to register with the local registration authority as permanent residents in the place where they usually reside, and an individual can only register as a permanent resident in one place. *See id*., at * 4, Article 6 of the HRR. When a person moves out of the

10

jurisdiction of his or her registration, he or she is required to apply to the local registration authority before moving, obtain a migration certificate and cancel the registration. *See id.*, at * 5-6, Article 10 of the HRR. In addition to the HRR, all citizens who have reached the age of 16 are required to comply with the Law of the People's Republic of China on Resident Identity Cards (Revision 2011) (the "Identity Card Law"). *See* 2011 China Law LEXIS 3493, at *2, Article 2 of the Identity Card Law. The Identity Card Law requires individuals to apply for an identity card which includes details of the individual's name, sex, nationality, date of birth, address of permanent residence, identity number and photograph. *See id.*, at *2-3, Article 3 of the Identity Card Law. These identity cards are issued by the same local registration authority referenced in the HRR.

### D. The Arbitrations

On May 28, 2018, Appellee initiated the initial arbitration against Borrower, Zhongji, Unifull, and Appellants for breach of the Loan and the Guaranties (the "Initial Arbitration"). 3-ER-321-322; 2-ER-126 ¶16. Borrower issued a public announcement on June 13, 2018, indicating the commencement of the Initial Arbitration. 2-ER-103, 108. Unifull contacted Appellee to negotiate a partial settlement of the Loan and release of Unifull's guarantee. Specifically, Zhongji's wholly owned subsidiary, Suzhou Zhengyue, arranged the partial settlement and repayment with Appellee to obtain the release of Unifull. On July 17, 2018, Suzhou

11

Zhengyue, a company controlled by Appellant Yan, signed an agreement with Appellee, acknowledging the validity and existence of the Loan and the Guaranties. 3-ER-321-22.

Following the successful transfer of half of its claim under the Loan, the Initial Arbitration was revoked on November 20, 2018 at Appellee's request. 3-ER-321-22. That same day, Appellee initiated another arbitration proceeding against Borrower, Appellants, and Zhongji to recover the remaining RMB 15,000,000 in loan principal. 3-ER-322. The Beijing Arbitration Commission (the "Commission") accepted the matter and assigned it case number (2018) J.Z.A.Z. No. 4111 (the "Arbitration"). 3-ER-313. The Loan and Personal Guarantee both contain dispute resolution clauses which mandate that any disputes arising from the Loan or the Personal Guarantee are to be resolved before the Beijing Arbitration Commission (the "Commission"). 3-ER-273 Art. X, 283 ¶ 11.

The Arbitration was governed by the ordinary procedures contained within the "Arbitration Rules of the Beijing Arbitration Commission" (the "Rules"), as implemented by the Commission on April 1, 2015. *See* 3-ER-313.

The Commission provided Appellants with notice pursuant to Articles 71(2) and (3) of the Rules at their last known address, which constitutes proper notice under the Rules. *See* 3-ER-313. Article 71(2) provides that notice "shall be deemed to have been served if they have been delivered to the parties or their authorized

representatives in person or by mail to the addressee's place of business, place of registration, place of residence, address indicated on ID card..." Critically, Article 71(3) provides that "[i]f, after reasonable inquiry, the address of the person to be served cannot be found, service on the respondent at his last known address may be deemed to have been effected." *See* https://www.bjac.org.cn/english/page/zc/guize_en2022.html. The Commission sent notice to the address found on Appellants' Chinese ID cards on three separate occasions via China's Express Mail Service ("EMS"). 3-ER-315; *see also* 2-ER-76-87. A publicly available document from the Shanghai Stock Exchange ("SSE") demonstrates that this property was Appellants' residence and was owned by Appellant Yan at all times relevant to the Arbitration. *See* 2-ER-88, 93-96. Appellants' valid and official ID cards provided this address, but they had moved from the country without informing the Commission or any other relevant Chinese governmental body of a new address, in violation of Chinese law. 2-ER-76-79.

On January 25, 2019, Borrower filed an objection with the Commission regarding jurisdiction. 3-ER-313. On June 11, 2019, the Commission issued a decision authorizing the arbitral tribunal, once formed, to decide the jurisdictional issue presented by Borrower. Because the parties did not select a panel in accordance with the schedule required by the Rules, the Commission chose a three-

person tribunal (the "Tribunal") and assigned them to this matter on June 11, 2019. 3-ER-314.

The Commission served notice of the formation of the Tribunal and the notice of the hearing date set for July 11, 2019, on Appellee, Borrower, Appellants, and Zhongji. 3-ER-314. Zhongji received notice of the Arbitration and chose not to participate. *Id*. Borrower participated in the Arbitration through counsel. *See* 3-ER-314-15 (noting that Borrower's agent attended hearings scheduled by the Commission). Appellant Yan was the actual controller of Borrower and primary equity holder of Zhongji at this time. 1-ER-5; *see also* 2-ER-126-27 ¶¶18, 19.

Despite being duly notified of the hearing by the Commission, Appellants and Zhongji did not appear on July 11, 2019. 3-ER-314. At the hearing, Borrower sought the recusal of one of the chosen arbitrators, and consequently the Tribunal was suspended. *Id.* After briefing the issue, on November 5, 2019, the Commission rejected Borrower's recusal arguments and on December 17, 2019, the Tribunal held a hearing at which Appellee and Borrower appeared but, despite being duly notified, Appellants and Zhongji failed to appear. 3-ER-315

### E. The Award

On March 24, 2020, the Tribunal delivered a final award in favor of Appellee. *See* 3-ER-286-334. The Award was issued in Mandarin, the language of the Arbitration, and assigned number (2020) J.Z.C.Z. No. 0455 (the "Award"). *Id.* The

Tribunal made the following determinations: (1) when the Loan Contract was signed, Appellant Yan held 95% of Zhongji's equity; (2) Borrower recognized in the trial that Appellant Yan was still the actual controller of Borrower; (3) Borrower recognized the authenticity of all the applicant's evidence, including the Letter of Guarantee signed by Appellants; (4) Appellants "issued two 'Letter of Guarantee' [sic] to [Appellee]"; (5) Appellants "had no objection to the 'Letter of Guarantee'"; and (6) "based on the existing evidence, the arbitration tribunal believes that the contract in this case is the true expression of the will of the parties, and the content does not violate the mandatory provisions of laws and administrative regulations, so it should be legal and effective." *See* 3-ER-317, 320, 322, 324. Based on the Personal Guarantee, the Tribunal found that Appellants "shall be jointly and severally liable for the settlement of the arbitration claims…." 3-ER-329.

### F. The Proceedings Below

On March 28, 2022, Appellee filed a petition in the U.S. District Court for the Central District of California to confirm the Award. 3-ER-468.

On October 12, 2022, Appellee filed its Amended Petition to confirm the Award, adding Appellant Liang as a party. 3-ER-347. Appellee attached the Personal Guarantee as an exhibit to the Amended Petition. 3-ER-362, 386-92.[1] In

---

[1] In the Amended Petition, Appellee mistakenly stated that "Respondents affixed their personal seals and signatures to the respective Personal Guarantees." 3-ER-351. Only the guarantee signed by Shanghai Zhongji Enterprise Group Co., Ltd had

response to the Amended Petition, Appellants alleged that they "do not recognize the Guarantee and that they in fact did not sign it." 2-ER-218. Appellants provided no other evidence in support of their contention that the Personal Guarantee was invalid.

With its reply brief filed on December 18, 2023, Appellee presented evidence in the form of a sworn affidavit from Mr. He Tao ("Mr. Tao"), the attorney who attended the execution of both the Loan and the Personal Guarantee, to counter Appellants' threadbare allegations that they did not recognize or sign the Personal Guarantee. 2-ER-114.

Mr. Tao "personally participated in the process where … Zhongtie …" executed the Loan and Guarantee agreements with Borrower, Zhongji, Unifull, and Appellants. 2-ER-123 ¶ 3. Mr. Tao recounted the process by which Borrower, Zhongji, and Appellants executed these contracts in great detail. *Id*. at ¶¶ 4-14. Mr. Tao confirmed that he "witnessed the entire process of [Appellant Yan] signing [the Personal Guarantee]" and that he "witnessed the entire process of [Appellant Liang] signing [the Personal Guarantee]." *Id.* at ¶¶ 13-14.

Upon learning that Appellants were representing to the District Court that their signatures were forged, Mr. Tao conducted an investigation. 2-ER-128 ¶¶ 24-

---

a seal affixed to it. 3-ER-387. The Personal Guarantee signed by Appellants had their signatures, but not their personal seals. 3-ER-281, 283.

28. On or around December 5, 2023, Mr. Tao obtained two samples of Appellant Yan's signature that had been filed on behalf of Zhongji with the Shanghai Municipal Market Supervision Administration and a third example also filed on behalf of Zhongji with the Shanghai Administration for Industry and Commerce. *Id*., 128-29 ¶¶ 25, 26. Mr. Tao included those samples in Exhibit 4 affixed to his affidavit as comparisons to the signature on the Personal Guarantee. *Compare* 2-ER-172, 173 and 174 *with* 3-ER-281. Mr. Tao also obtained records of an action in China where Appellants disputed the authenticity of their signatures. 2-ER-129-30 ¶ 27. The Chinese court, using one of the samples Mr. Tao provided within Exhibit 4, conducted a "judicial appraisal of the authenticity of Appellant Yan Jinggang's signature samples in dispute" and undertook "handwriting identification by the Academy of Forensic Science under the Ministry of Justice of China. Both the court of the first instance and court of second instance affirmed the result" and dismissed Appellant Yan's claims. *Id.*; 2-ER-203.

In response to this detailed rebuttal evidence, Appellants filed their proposed sur-reply with additional declarations that presented no evidence to support their claims beyond reiterating their self-serving, unsubstantiated denials. In both declarations, each Appellant denied ever meeting Mr. Tao, and attacked Mr. Tao's credibility. 2-ER-21, 34 ¶ 3; 2-ER-36 ¶ 3. Further, Appellant Yan, for the first time, denied (i) that he ever held more than an indirect equity interest in Borrower, Suzhou

17

Zhengyue, and Huzhou Youfou Holdings Co. Ltd ("Youfou") (an entity that held a 29.80% controlling stake in Unifull); (ii) that he had ever participated in the day-to-day management of these entities; (iii) that he had any involvement or knowledge of the settlement agreement fostered by Suzhou Zhengyue between Unifull and Appellee; and (iv) that he had any involvement in or knowledge of Borrower's participation in the arbitration. 2-ER-35, ¶¶ 5-6; 2-ER-136. Appellants provided nothing further to substantiate these claims. Moreover, the assertion that Appellant Yan never held more than an indirect equity interest in Borrower is inconsistent with the findings of the Tribunal. The Tribunal made a factual finding in the Award that "[Appellant Yan], was still the actual controller of [Borrower]," based on Borrower's own admission at trial. 3-ER-322. The District Court properly denied the request for leave to file a sur-reply, finding that the "Court need not rely on any of the issues raised in Respondents' proposed Sur-Reply." 1-ER-8.

On January 12, 2024, the District Court issued an Order granting Appellee's petition to confirm the Award and finding Appellants jointly and severally liable for the Loan pursuant to the Personal Guarantee. *See* 1-ER-2.

## SUMMARY OF ARGUMENT

The District Court correctly determined Appellants failed to meet their substantial burden to establish a defense to confirmation of the Award pursuant to the Convention.

A review of the proceedings before the District Court confirms this ruling was entirely reasonable and appropriate. The District Court, as a court sitting in secondary jurisdiction, was required to conduct only a "summary proceeding" and review of the petition for recognition and enforcement of an arbitral award under the Convention. This review is extremely deferential and circumscribed. In opposition to the petition, Appellants were required to establish one of the narrowly enumerated defenses under Article V of the Convention. Appellants failed to meet their substantial burden to do so.

I. Appellants argue that they did not receive actual notice of the proceedings below, and therefore the District Court erred in enforcing the arbitral award. Appellants' argument fails for two reasons. *First*, the District Court correctly determined that proper notice, rather than actual notice, is required to comply with federal due process standards, the Commission's rules, and applicable U.S. case law. Proper notice under the Convention requires notice that is "reasonably calculated" to apprise a litigant of arbitration proceedings. The District Court correctly determined that the Commission mailed notice multiple times to Appellants' last known and only available address, as they had not updated the government following their sudden relocation to the United States, in violation of Chinese law. Notice was reasonably calculated to apprise Appellants of the arbitration, and therefore was proper. Appellants' reliance on *Jones v. Flowers*—a

19

case which did not concern recognition of a foreign arbitration award pursuant to the Convention—and its progeny is misplaced, as none of these cases disturb the due process standard articulated by *Mullane* and *Linley*, which requires notice be "reasonably calculated, under the circumstances" to apprise Appellants of the arbitration. Nor is Appellants' failure to attend the arbitration after receiving proper notice a basis for any of the seven narrowly tailored defenses to confirmation of the Award under the Convention. *Second*, even if due process required actual notice (it does not), the District Court made several findings of fact that strongly suggest Appellant Yan received notice via alternative means, as he was the sole director and shareholder of Borrower, who itself received notice of the arbitration and actively participated in the proceedings. These findings of fact can only be disturbed upon a showing of clear error, which Appellants cannot achieve.

**II.** The District Court properly rejected Appellants' attempt to prevent enforcement of a foreign arbitral award based on an unsupported argument that their signatures on the Personal Guarantee were forged. The District Court found that Appellants waived any argument as to the validity of the Personal Guarantee by failing to raise it at the arbitration, of which they had proper notice. The Court must reject Appellants' improper attempt at collateral litigation, which is contrary to the mandate of the Convention. Appellants ask the Court to stray from well-settled precedent and create a roadmap for every defendant seeking to avoid the results of

20

arbitration:  simply ignore notice of the proceedings, avoid the arbitration, and then allege the agreement to arbitrate was forged when the award is enforced.  Such a result would encourage collateral attacks on foreign awards and would undermine principles of international reciprocity.

But even if the forgery defense was not waived and collateral litigation was permitted in courts of secondary jurisdiction, Appellants failed to meet their substantial burden of presenting admissible evidence establishing a triable issue of fact.  The District Court conducted a proper "summary proceeding" and, upon consideration of the evidence presented, determined that Appellants failed to meet their burden.  This evidence included a declaration by an attorney who personally witnessed Appellants sign the document, exemplars of their signatures on official records, and proof that they attempted (and failed) to escape liabilities based on claims of forgery before other Chinese courts.  The District Court correctly made findings of fact that Appellants signed the Personal Guarantee.

## STANDARD OF REVIEW

The Court's review of the District Court's ruling is informed by the policies and principles that animate the Convention.  The Convention was established to instill confidence and promote reciprocity among signatory countries.  The treaty aims to encourage the recognition and enforcement of commercial arbitration agreements across jurisdictions and to present uniform standards by which arbitral

awards are enforced in signatory countries to ensure the efficient resolution of disputes.[2] *See Ministry of Def. & Support v. Cubit Def. Sys., Inc.*, 665 F.3d 1091, 1098 (9th Cir. 2011) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974)); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) ("[the United States has an] emphatic federal policy in favor of arbitral dispute resolution . . . [and] since this Nation's accession in 1970 to the Convention . . . that federal policy applies with special force in the field of international commerce."). The collateral litigation of an arbitral ruling Appellants seek undermines the benefits and purpose of the Convention and risks inviting retaliatory non-enforcement.[3]

To effectuate these important policy concerns, confirmation of an arbitral award under the Convention "'is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to

---

[2] The goal of the Convention "is to promote the enforcement of arbitral agreements and thereby facilitate international business transactions on the whole." *Belship Navigation, Inc. v. Sealift, Inc.*, No. 1:95-CV-02748, 1995 U.S. Dist. LEXIS 10541, at *17 (S.D.N.Y. July 27, 1995).

[3] Refusing to enforce an international arbitration award invites "unseemly and mutually destructive jockeying by the parties to secure tactical litigation advantages" and may "damage the fabric of international commerce and trade, and imperil the willingness and ability of businessmen to enter into international commercial agreements." *Scherk* 417 U.S. at 516-17.

confirm.'" *Castro v. Tri Marine Fish Co. LLC*, 921 F.3d 766, 773 (9th Cir. 2019) (quoting *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007)); *see also Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997) ("[t]he confirmation of an arbitration award is a summary proceeding . . .[and t]he review of an arbitration award is 'very limited. . .in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'").

Under this deferential standard, the court will not "review the merits of the underlying arbitration[,]" but merely "whether the party established a defense under the Convention." *China Nat'l Metal Prods. Import/Export Co. v. Apex Digital, Inc.*, 379 F.3d 796, 799 (9th Cir. 2004); *see also New Frontier Inv. AG v. BitCenter, Inc.*, 2024 U.S. Dist. LEXIS 20754, at *12 (N.D. Cal. Feb. 6, 2024) (finding that, "[r]eview of an arbitration decision is limited and highly deferential," and "[n]either erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitration award"); *Aperture Media Partners LLC v. Burmester, Duncker & Joly GmbH & Co. KG*, 2022 U.S. Dist. LEXIS 181029, at *7 (C.D. Cal. Sept. 30, 2022) (quoting *Stead Motors of Walnut Creek v. Auto Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers*, 866 F.2d 1200, 1204 (9th Cir. 1989) (en banc)) ("[W]hen reviewing the award of an arbitrator chosen by the parties to [an] agreement, [the court is] bound—under all except the most limited

23

circumstances—to defer to the decision of another, even if [the court] believe[s] that the decision finds the facts and states the law erroneously.") (internal citation and quotations omitted); *see also Karaha Bodas Co. v. Negara*, 335 F.3d 357, 368 (5th Cir. 2003) ("courts in countries of *secondary* jurisdiction may refuse enforcement only on the limited grounds specified in Article V.") (emphasis in original).

This Circuit routinely recognizes that the burden on a party seeking to avoid enforcement "is substantial 'because the public policy in favor of international arbitration is strong, and the Convention defenses are interpreted narrowly.'" *U.S. v. Marubeni Corp.*, 592 Fed. Appx. 642, 644 (9th Cir. 2015) (quoting *Polimaster Ltd. v. RAE Systems, Inc.*, 623 F.3d 832, 836 (9th Cir. 2010)). A district court "***must*** confirm a foreign arbitral award unless the party resisting enforcement meets its 'substantial' burden of proving one of seven narrowly interpreted defenses." *Castro,* 921 F.3d at 773 (emphasis added). This high burden accords with courts' general disapproval of "improper collateral litigation" in the context of an arbitral award's enforcement which may itself "seriously . . . undermine national policy" in support of the Convention's purposes. *Pagaduan v. Carnival Corp.*, 830 Fed. Appx. 61, 63 (2d Cir. Nov. 25, 2020) (ellipses in original) (internal citation and quotations omitted). That is why courts have "generally refused to second guess an arbitrator's resolution of a contract dispute," as Appellants seek to do here, so long as the

arbitrator indicates "even a barely colorable justification for the outcome reached . . . ." *Yusuf*, 126 F.3d at 23 (affirming district court's confirmation of arbitral award).

Accordingly, district courts conduct a very limited review of petitions to recognize and enforce foreign arbitration awards, and this Court reviews *de novo* "only whether the party established a defense under the Convention." *China Nat'l Metal Prods.*, 379 F.3d at 799 (*quoting Ministry of Def. of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 746, 770 (9th Cir. 1992)).

"Factual findings underlying the court's decision will be reversed only for clear error." *Woods v. Saturn Dist. Corp.*, 78 F.3d 424, 427 (9th Cir. 1996). The "clear error" standard of review "is significantly deferential, and [the reviewing court] will accept the lower court's findings of fact unless [it is] left with the definite and firm conviction that a mistake has been committed." *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 843 (9th Cir. 2004) (internal quotations and citation omitted); *see Anderson v. City of Bessemer, N.C.*, 470 U.S. 564, 573 (1985) ("This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently."); *U.S. v. Hinkson*, 585 F.3d 1247, 1261 (9th Cir. 2009) (en banc) ("[O]ur review of a factual finding may *not* look to what we would have done had we been in the trial court's place in the first instance, because that review would be

de novo and without deference.") (emphasis in original) (vacated in part on other grounds).

## **ARGUMENT**

### I.  **APPELLANTS FAIL TO MEET THEIR SUBSTANTIAL BURDEN OF ESTABLISHING A DEFENSE TO CONFIRMATION OF THE ARBITRAL AWARD BASED ON LACK OF PROPER NOTICE**

Appellants attempt to assert a defense to the confirmation of the arbitral award by arguing they never received proper notice of the proceedings.  The notice defense fails for two reasons.  *First*, the District Court correctly held that proper notice, rather than actual notice, is required to comply with United States due process standards.  The District Court correctly determined that the notice of the arbitration sent to Appellants was "proper," as it was "reasonably calculated" to apprise them of the arbitration.  *Second*, even if the Court finds that the Commission's multiple attempts to mail notice to Appellants' former residence did not comply with due process, the District Court made several findings of fact that strongly suggest Appellants received notice of the arbitration proceedings when the Commission served a company Appellant Yan closely controlled, and that company participated in the arbitration.  Those findings provide the Court with an independent basis to affirm confirmation of the Award.

A.   **The District Court Correctly Determined that Proper Notice Under the Convention Requires Notice that is "Reasonably Calculated" to Apprise a Litigant of Arbitration Proceedings and Appellants Received Proper Notice Here**

The first defense to the confirmation of a foreign arbitral award pursuant to Article V of the Convention is that the party against whom the award is invoked was not given "proper notice" of the proceedings. Proper notice means "notice that is ***reasonably calculated*** to apprise a litigant of arbitration proceedings." *Linley Invs. v. Jamgotchian*, 670 Fed. Appx. 627, 628 (9th Cir. 2016) (emphasis added) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)) (notice delivered on numerous occasions over a six-month period to appellant constituted "proper notice" of a pending arbitration under the Convention and was "reasonably calculated" to give intended recipient notice)).

"Proper notice" cannot be equated with "actual notice." *See Tianjin Port Free Trade Zone Int'l Trade Serv. Co. v. Tiancheng Int'l, Inc. USA*, 2018 U.S. Dist. LEXIS 160390, * 12 (C.D. Cal. Sept. 18, 2018). In *Tianjin*, the Central District of California rejected respondent's argument that it did not receive proper notice of a foreign arbitration under the Convention, even though it did not receive actual notice, emphasizing the heavy burden placed on respondents wishing to avoid enforcement of an arbitration award pursuant to the Convention. *Id.* at *9, 12. There, the court found that the arbitrator had provided proper notice where it mailed by "express mail service, at least four notices of the arbitration proceeding," even though the

27

respondent maintained it did not receive the notice. *Id.* at *12-13. The court explained, "[respondent] seeks to transform the Convention's requirement that a party receive 'proper notice' of an arbitration proceeding into a requirement that the party receive 'actual notice.' However, '[i]n this context, 'proper notice' means notice that is reasonably calculated to apprise a litigant of arbitration proceedings.'" *Id.* at *12 (citing *Linley*, 670 F. App'x at 628). The court also explained that "[b]ecause the appropriate requirement is 'proper notice,' rather than 'actual notice,' [respondent's] witness testimony" concerning its purported non-receipt of notice, "even if accepted as true," was irrelevant to whether the arbitrator complied with the Convention's proper notice standard. *Id.* at *12-13; *see also Guarino v. Productos Roche S.A.*, 839 F. App'x 334, 340 (11th Cir. 2020) (unpublished) (due process requirement was satisfied where arbitration commission attempted to provide respondents with notice multiple times, explaining that, "[s]uccessful actual notice is not required; the adverse party need only prove an attempt to provide actual notice").

Similarly, the Commission's Rules do not require actual notice. Article 71(2) of the Rules provides that notice "shall be deemed to have been served if they have been delivered to the parties or their authorized representatives in person or by mail to the addressee's place of business, place of registration, place of residence, address indicated on ID card . . . ." Article 71(3) provides that "[i]f, after reasonable inquiry,

the address of the person to be served cannot be found, service on the respondent at his last known address may be deemed to have been effected." Moreover, the Tribunal expressly found that the Commission "served all the arbitration materials submitted by the applicant, the notice of defense, and the arbitration rules and the list of arbitrators to the respondent." 3-ER-313. This finding cannot be disturbed by the district court. *See Traf Intercontinental Elektronik-Handels GmbH v. Sonocine, Inc.*, Case No. 3:17-cv-00672-LRH-WGC, 2019 U.S. Dist. LEXIS 29375, at *11 (D. Nev. Feb. 25, 2019) (citations omitted); *see also infra* at 36.

Neither standards of due process under United States jurisprudence, the Rules, nor the Convention mandate that "proper notice" can only be satisfied if an arbitral tribunal investigates the whereabouts of a party after notice is returned as undeliverable.[4]

---

[4] Notably, Article 3(1)(A) of the UNCITRAL Model Law on International Commercial Arbitration provides that "any written communication is deemed to have been received…if it is delivered at his place of business, habitual residence or mailing address; if none of these can be found after making a reasonable inquiry, a written communication is deemed to have been received if it is sent to the addressee's last-known place of business, habitual residence or mailing address by registered letter or any other means which provides a record of the attempt to deliver it." UNCITRAL Model Law on International Commercial Arbitration, Article 3(1)(a) (December 4, 2006), https://uncitral.un.org/sites/uncitral.un.org/files/media-documents/uncitral/en/19-09955_e_ebook.pdf. Also, international courts have interpreted the notice requirement practically and flexibly, and have considered the parties' conduct to determine whether they knew or ought to have known of the existence of the arbitration. *See e.g. Project XJ220 Ltd. v. Mohamed Yassin D.*

29

The District Court also correctly held that Appellants failed to meet their substantial burden of proving that notice of the arbitral proceeding was not proper. The District Court made the following relevant factual findings:

- The Commission mailed notice of the July 2019 arbitration to Appellants' last known address as listed on a publicly available document from the SSE as well as their official Chinese-government issued IDs.  1-ER-5-6

- The Commission subsequently mailed notice of the December 2019 arbitration to Appellants at their last known address.  1-ER-6.

*See also* 2-ER-62 ¶ 7; 2-ER-76-79; 2-ER-94.

These findings may only be reversed for clear error, a high threshold for Appellants to overcome.  *See Woods,* 78 F.3d at 427; *Wal-Mart Stores, Inc. v. PT Multipolar Corp.*, No. 98-16952, 98-17384, 1999 U.S. App. LEXIS 31578, at *6 (9th Cir. Nov. 30, 1999) (holding reversal is only proper where there exists a "definite and firm conviction that the district court committed a clear error of judgment after weighing the relevant factors.").  Appellants do not dispute these findings or even attempt to surmount their substantial burden to argue that they represent clear error.  The District Court's holding was further supported by the fact that Appellants do not assert that they notified the Chinese government of their

*(Spain), Supreme Court*, Spain, 1 February 2000, XXXII Y.B. Com. Arb. 507 (2007); *Kammergericht [KG]*, Germany, 17 April 2008, 20 Sch 02/08.

relocation to the United States; therefore, the Commission reasonably believed it was sending notice to the correct address.  1-ER-8.

In determining that notice was proper, the District Court correctly relied on its decision in *Ma v. Fang*, No. SACV 21-441-PSG-ADSx, 2022 U.S. Dist. LEXIS 67934 (C.D. Cal. 2022 Mar. 2, 2022), which is squarely on point.

The petitioner in *Ma*, like Appellants here, fled China prior to receiving notice of an impending arbitration without notifying the Chinese authorities that he had relocated.  *Id.* at *8.  When the tribunal attempted to serve respondent at his last known address as indicated on his Chinese national ID card, delivery was unsuccessful.  *Id*. at *10.  As here, the tribunal also served notice on several business entities at which respondent was "at the helm."  *Id*. at *10-11.  The court in *Ma* acknowledged that "[t]he Chinese government maintains a database of its residents' official addresses and requires residents to update their records if they move within or out of China."  *Id*., at * 7.  Given that the tribunal lacked "information to suggest that his residential address [was] no longer valid," the court in *Ma* relied on the standards articulated in *Mullane* and *Linley* to hold that the tribunal's efforts to notice respondent at his last known address and at affiliated businesses was proper and complied with due process.  *Id*. at *8-10.

As in *Ma*, the Commission here provided Appellants with proper notice at their last, and only lawful address, as well as at two corporate entities Appellant Yan

owned and controlled. These efforts were reasonably calculated to provide notice to Appellants. Neither Appellee nor the Commission had any information indicating where Appellants could be reached. Indeed, even information reported by the Shanghai Stock Exchange—stating that a Chinese court authorized the seizure of property owned by Appellant Yan at his Chinese residence—indicated the address contained on Appellant Yan's China ID card was his valid Chinese address. Here, neither Appellant provided any governmental authority with the required update; they simply fled the country to avoid legal consequences and debts.

That the notices were returned as undelivered does not change the result that notice was proper. Appellants fled China in the wake of the Securities Investigation without informing any governmental agency. The Commission was not required to undertake a manhunt to determine Appellants' whereabouts. Under the circumstances and pursuant to controlling precedent, notice sent by mail to the address on Appellants' China ID cards was proper.

The District Court also relied on *Guarino* in determining that notice was proper. *Guarino v. Productos Roche S.A.*, 839 F. App'x 334 (11th Cir. 2020). In *Guarino*, the arbitral tribunal made multiple failed attempts to mail or email notice to an intended recipient at his last known personal and business addresses. *Id*. at 340. As here, the intended recipients did not appear at the arbitration, yet notice was

deemed proper under the Convention as the tribunal's efforts were held to be "reasonably calculated" to notify Guarino of the arbitration proceedings. *Id*. at 340.

Given Appellant Yan's control of Borrower and Zhongji (*see supra* § Statement of the Case, B) the facts and holding of *Yukos* also support the District Court's fining of proper notice. *See Yukos Capital S.A.R.L. v. OAO Samaraneftegaz*, 963 F. Supp. 2d 289 (S.D.N.Y. 2013). There, the respondent argued that the arbitral award could not be enforced against it because, *inter alia*, it did not receive adequate notice of the arbitration proceedings. *Id.* at 291-92, 295-98. However, the respondent admitted to receiving certain notices of the arbitration that were mailed to its business address. *Id.* at 295, 297. After the respondent failed to respond to these notices, the tribunal directed all subsequent notice to respondent's management company, who responded to the tribunal to dispute the validity of the arbitration on behalf of respondent in an earlier letter. *Id* at 293. The district court held that the defendant failed to establish its lack of notice defense under Article V because it did not demonstrate that the proceedings were conducted in violation of U.S. due process standards. *Id.* at 298. The court reasoned that the notices sent to respondent's management company were reasonably calculated to inform respondent of the proceeding because the tribunal reasonably believed respondent's management company was its representative. *Id*. at 297.

Again, the facts here are strikingly similar: Borrower, which the Tribunal believed Appellant Yan controlled, received notice and participated in the arbitration. Thus, notice sent to Borrower, as in *Yukos*, was reasonably calculated to inform Appellant Yan of the proceedings, and therefore "there has been no due process violation" here. *See id.*

## B. The District Court's Findings of Fact Strongly Suggest That Appellants Received Proper Notice Via Alternative Means

The District Court made several additional findings of fact that strongly suggest notice was provided to Appellants via alternative means. *See Ma*, 2022 U.S. Dist. LEXIS 67934 at *10 ("The fact that [respondent's companies] received actual notice of the arbitration proceeding and submitted a response **strongly suggests** that [respondent] also had notice of the arbitration proceedings given his prominent leadership role in the companies.") (emphasis added). Specifically, the court found:

- Appellant Yan is the sole director and shareholder of two corporations, Borrower and Zhongji Enterprise Group Co., Ltd. 1-ER-5.

- In November 2018, Appellee initiated arbitration proceedings against Borrower, Appellants and other parties. *Id.*

- In January 2019, Borrower participated by filing an objection with the Commission regarding jurisdiction, which the Commission referred to the Tribunal. *Id.*

34

- In July 2019, Borrower further participated by seeking recusal of one of the selected arbitrators (which was rejected). 1-ER-6.

The District Court did not need to make these findings to conclude Appellants received proper notice of the arbitration. It was sufficient to find that the Commission's attempted notice at Appellants' official address complied with the requirements of the Rules, the Convention, and federal due process standards enunciated in *Mullane* and *Linley*. However, this factual record indicates that, although not required, Appellants received notice of the arbitration beyond the notice that was provided to Appellants' official residential address. As above, such factual findings can only be reversed for clear error. Again, Appellants not only fail to establish such clear error—they make no attempt in their opening brief to dispute these factual findings.

Appellants attempted to submit, on sur-reply, an additional self-serving declaration contending that Appellant Yan was not in control of Borrower and Zhongji at the time of the arbitration. The District Court, however, properly denied Appellants' request and found, as a matter of fact, that Appellant Yan was in control of both entities during the arbitration. 1-ER-5. Not only was this finding proper, but it would also have been error for the District Court to have concluded otherwise considering the Tribunal's own findings that Appellant Yan was in control of Borrower through the arbitration (as Borrower itself admitted at the arbitration), and

35

that Appellant Yan held a 95% equity stake in Zhongji when the Loan was signed. 3-ER-322 ("when the 'Loan Contract' was signed, [Appellant Yan] held 95% of [Zhongji's] equity. [Borrower] recognized that [Appellant Yan] was still the actual controller of [Borrower] in the trial."). It is well settled that a reviewing district court, sitting in secondary jurisdiction, should not disturb the findings of the tribunal. *See Traf Intercontinental*, 2019 U.S. Dist. LEXIS 29375 at *11 ("A court is obligated to confirm an arbitration award unless the award is vacated, modified, or corrected, even if the arbitrator made erroneous findings of fact or misinterpretations of law) (citing *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (en banc)); *see also Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GmbH*, 921 F.3d 1291, 1305-06 (11th Cir. 2017), *cert denied*, 140 S. Ct. 124, 205 L. Ed. 2d 130 (2019) (rejecting defendant's argument that district court was required to disregard arbitrator's findings and conduct its own inquiry because it asserted a fraud-based public-policy defense.). Thus, the Tribunal's own findings resolve, for purpose of this case, that Appellant Yan was in control of Borrower and Zhongji. The District Court's findings were appropriately consistent with that determination.

Once again, the facts at issue in this case are strikingly similar to *Ma*. As noted, the arbitration commission in *Ma* first attempted service at respondent's last known residential address as indicated on respondent's Chinese ID card. 2022 U.S.

Dist. LEXIS 67934 at *8.  Respondent then left China without notifying the Chinese government of his change of address.  *Id.*  The arbitration commission also served notice to four companies respondent controlled as legal representative, including Fengrun Financial Holding Group, Ltd. ("Fengrun"), an entity that submitted a response to the arbitration commission, but ultimately did not attend the hearing.  *Id.* at *9-10.  According to the Court, "[t]he fact that "Fengrun financial and [respondent's] other three companies received actual notice of the arbitration proceeding and submitted a response strongly suggest[ed] that [respondent] also had notice of the arbitration proceedings given his prominent leadership role in the companies."  *Id.* at *10.

The same conclusion is warranted here.[5]  As in *Ma*, the District Court found that Appellant Yan was "the sole director and shareholder" of Borrower, an entity that participated in the arbitration.  Appellants did not, nor can they, meet their high burden of showing this finding was clearly erroneous.  Thus, any suggestion that Appellant Yan, as the sole shareholder and director of Borrower, was unaware that

---

[5] The fact that the District Court did not rest its opinion on a finding that Appellants received actual notice does not prevent the Court from holding as much.  Appellate courts "may affirm on any basis supported by the record, whether or not relied upon by the district court."  *Muniz v. UPS*, 738 F.3d 214, 219 (9th Cir. 2013). A "decision of the district court may be affirmed 'even if the district court relied on the wrong grounds or wrong reasoning.'"  *Id.* at 219 (quoting *Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 418 (9th Cir. 1998)).

Borrower both received the Commission's notice and participated in the underlying arbitration strains credulity. Moreover, under the limited review courts sitting in secondary jurisdiction conduct under the Convention, Appellants could not relitigate in the District Court the findings of the Tribunal establishing that Appellant Yan was in fact in control of Borrower at all relevant times. Finally, even if it was permissible, because it is Appellants' substantial burden to demonstrate that a defense to recognition and enforcement applies, their failure to supply any evidence that Appellant Yan was no longer at the helm of Borrower is significant. *See Ma,* 2022 U.S. Dist. LEXIS at *10.

In sum, the District Court correctly found that Appellants received proper notice of the Arbitration pursuant to the Convention and that they failed to satisfy their substantial burden of proving an Article V(1)(b) defense to confirmation of the Award. The District Court also correctly found that Appellant Yan was Borrower's director and sole shareholder. Appellants do not even attempt to show that this finding constituted clear error on the part of the District Court.[6] As above, the

---

[6] As discussed *infra* § II below, it was entirely appropriate and well within the District Court's discretion to deny Appellants' request to file a sur-reply and attendant self-serving declaration based on the evidentiary record and arguments briefed by both parties. *See Brewster v. Wachovia Mortg.*, 699 Fed. Appx. 705, 706 (9th Cir. 2017) (holding district court did not abuse its discretion by denying motion to file sur-reply and stating that a "court reviews for abuse of discretion a district court's decisions concerning its management of litigation.") (citing *Preminger v. Peake*, 522 F.3d 757, 769 n.11 (9th Cir. 2008)).

District Court was well within its discretion to find the Commission's multiple attempts to mail notice to Appellants at their only known address was sufficient under the Rules, the Convention, and federal due process. That the District Court made additional findings indicating Appellants also received notice through Borrower, a company Appellant Yan closely controlled, only further confirms the propriety of the District Court's judgment. Appellants indisputably received proper notice of the arbitral proceedings.

### C. Appellants Fail to Meet Their Substantial Burden to Raise a Defense Based on Lack of Due Process

#### 1. Appellants' Reliance on *Jones v. Flowers* Is Misplaced

Appellants' misguided appeal relies almost entirely on the assertion that *Jones v. Flowers* changes well-established law regarding federal due process standards. They are wrong.

*First*, *Jones* did not concern the proper notice standard under the Convention. Instead, it addressed the notice obligations of the state of Arkansas when seeking to conduct a tax sale of a citizen's property, a circumstance that implicates none of the Convention's important policies. *Jones v. Flowers*, 547 U.S. 220 at 234 (2006) ("[B]efore forcing a citizen to satisfy his debt by forfeiting has property, due process requires the government to provide adequate notice of the impending taking."). In light of the international reciprocity issues that drive decisional law under the Convention, and the fact that courts around the world consistently recognize the

proper notice analysis the District Court applied here, it is entirely unsurprising that Appellants could not identify a single U.S. case under the Convention (or even an arbitration confirmation case) supporting their failed argument that the Commission should have, or even could have, "done more" to provide notice.  *See* Appellants' Br. at 13-17.

*Second*, even if *Jones* were applicable in the context of a dispute arising under the Convention (it is not), it does not disturb the federal due process standard articulated in *Mullane* and *Linley*, which held that notice is proper so long as it is "reasonably calculated, under all the circumstances" to apprise Appellants of the Arbitration.  *See Mullane*, 339 U.S. at 314; *Linely*, 670 F. App'x at 628.

In *Jones*, after the homeowner's mortgage was paid off, the property taxes— which had been paid by the mortgage company—went unpaid, and the property was certified as delinquent.  *Jones*, 547 U.S. at 223.  The state mailed certified letters to the property owner's address, which were returned "unclaimed," and published a notice of public sale in a local newspaper.  *Id.* at 223-24.  In its opinion, the Supreme Court suggested the state should have conducted alternative modes of service, such as posting notice on the front door or sending notice via regular mail addressed to "occupant" so that it would be left at the house and the owner's daughter might have seen it.  *See id.* at 235.  But nowhere in the *Jones* opinion does the Court suggest that actual notice is required, or that specific steps are necessary for providing notice in

40

order to comply with federal due process. Indeed, the Court rejected the argument that the state should have looked for the homeowner's current address and held that if there was nothing reasonable for the state to do, it did not need to do anything more. In fact, *Jones* only held that the state was obligated to take "additional *reasonable steps* to notify Jones . . . if *practicable* to do so." *Id.* at 225 (emphasis added). The Court explained that "if there were no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, it [could] not be faulted for doing nothing." *Id.* 234.

Here, the Commission took practicable steps to notice Appellants using all information reasonably available. *First*, the Commission made repeated attempts to serve Appellants at their only known residential address, consistent with available documents from the SSE and as indicated on their Chinese national ID cards. 3-ER-313-14. *Second*, the Commission sent notice of the Initial Arbitration and Arbitration to Borrower and Zhongji, companies which it conclusively found Appellant Yan controls. *Id.* Notice in this instance was successful, as Borrower actively participated in the Arbitration. *Id. Finally*, the Commission also sent notice of the Initial Arbitration to Unifull, another entity Appellant Yan controls, who was later released from its guarantee after negotiations between Appellee and Zhongji. *Id.; see also* 2-ER-135-36; 2-ER-146; 1-ER-5. All told, the Commission sent notice of the arbitration to three entities Appellant Yan controls, in addition to mailing

41

notice to Appellants' registered legal address in China. These efforts were reasonably calculated to appraise Appellants under the circumstances of Appellants' unannounced departure from China, in accord with the holdings in *Jones*, *Mullane*, and *Linley*.

Yet Appellants still argue that this was not enough, suggesting instead that the Commission could have attempted notice "through a family member, associate, or business connected to Appellants," or via publication. Appellant's Br. at 18. Appellants ignore that the Commission *did* provide notice to businesses connected to Appellant Yan and failed to articulate how or why it would be reasonable for the Commission to locate Appellants' family members or associates to effectuate service. There is simply no such standard for satisfaction of federal due process, and this argument fails.

### 2. Appellants Fail to Identify Any Other Case Law That Dictates a Contrary Result

Appellants' attempt to rely on *Ritchie* and *De Fontbrune* is equally unavailing. *See* Appellant's Br. at 17-20. Like *Jones*, neither case disturbs the "reasonably calculated" standard enunciated in *Mullane* and *Linley* or prescribes a specific method for effecting proper notice. Nor did either case address notice in a foreign arbitration. Even if these cases were relevant, the parties concerned had additional reasonable means of effecting notice, which they overlooked or botched, that simply do not exist here. *See De Fontbrune v. Wofsy*, 39 F.4th 1214, 1232 (9th Cir. 2022)

(suggesting an alternative address for serving appellees available on appellees' business' website); *U.S. v. Ritchie*, 342 F.3d 903, 910 (9th Cir. 2003) (suggesting government's publication of notice, in addition to efforts to mail notice, would have constituted sufficient notice had government published the correct location and date of its seizure of property at issue). Here, no such reasonable alternative avenues of notice were available to the Commission to serve Appellants given their unannounced departure from China without updating their address as required by Chinese law.

### 3. Appellants' Intentional Avoidance of the Arbitration Proceeding Is Not a Defense

Almost immediately following the announcement of a securities investigation into Appellant Yan and his companies, Appellants absconded to the United States without notifying the proper authorities of their departure in violation of Chinese law. Appellants must not be permitted to benefit from their apparent intentional attempt to evade notice. *See Bernstein Seawell & Kove v. Bosarge*, 813 F.2d 726, 729 (5th Cir. 1987) ("[D]ue process is not violated if the hearing proceeds in the absence of one of the parties when the party's absence is the result of his decision not to attend."); *see also Yukos*, 963 F. Supp. 2d at 296-97; *Overseas Cosmos v. NR Vessel Corp.*, 1997 U.S. Dist. LEXIS 19390, at *13-14 (S.D.N.Y. Dec. 8, 1997) (rejecting respondent's argument for vacating arbitral award under Article V(1)(b) of the Convention where "Respondent's alleged lack of participation in the

arbitration proceeding, even if true, could only be interpreted as intentional."); *Geotech Lizenz AG v. Evergreen Sys., Inc.*, 697 F. Supp. 1248, 1253 (E.D.N.Y. 1988) (finding that notice complied with due process where "[respondent's] failure to participate was a decision that was reached only after the Company had full knowledge of the peril at which it acted.").

The circumstances here show that Appellants intentionally evaded notice. The Commission mailed notice to Appellants' only known address, which Appellants intentionally did not update, in violation of Chinese law. Further, the Commission served notice of the arbitration on three companies it found Appellant Yan controls, one of which, Borrower, actively participated in the arbitration. The Commission reasonably believed that Appellants were thus aware of the arbitration's initiation and proceedings. Appellants may not construct an alleged due process violation by hiding and choosing not to participate in the arbitration hearing.

Appellants fail to meet their substantial burden to show that they were not given proper notice of the arbitration proceeding. The District Court's decision was correct. To hold otherwise would invite gamesmanship from similarly situated parties, who will undoubtedly also attempt to avoid notice to neutralize the threat of having a foreign arbitral award against them enforced in the United States.

II. **APPELLANTS FAIL TO MEET THEIR SUBSTANTIAL BURDEN OF ESTABLISHING A DEFENSE TO CONFIRMATION OF THE ARBITRAL AWARD BASED ON CHALLENGES TO THE VALIDITY OF THE CONTRACT**

Appellants argue that the Award may not be confirmed because the underlying agreement was forged and therefore there was no agreement to arbitrate. *See* Appellants' Br. at 24-30. Appellants are wrong for several reasons. *First*, the District Court correctly determined that because Appellants had proper notice of the arbitration and did not attend, their challenges to the underlying document were waived. *Second*, Appellants' attempt to raise the forgery defense for the first time in response to a recognition and enforcement petition is an improper attempt at collateral litigation that the Convention precludes. Permitting Appellants' forgery argument to proceed at this late stage would contravene important policies underlying the Convention and encourage collateral litigation during enforcement proceedings. *Third*, even if the Court were to entertain Appellants' *post hoc* forgery challenge, the District Court appropriately conducted a summary proceeding on the record before it and properly rejected it. There is simply no evidentiary basis for Appellants' claim, nor was the District Court required to hold a hearing or a jury trial to reach its determination.

### A. The District Court Appropriately Found That Appellants Waived Challenges to the Personal Guarantee's Validity by Failing to Raise Them in Connection with the Arbitration

Appellants' forgery argument was waived because they received proper notice of the arbitration and did nothing. The law is clear that where a party receives proper notice, it must raise a forgery challenge during the arbitration or that defense is waived. *See Tianjin Port Free Trade Zone Int'l Trade Serv. Co. v. Tiancheng Int'l, Inc. USA*, 2018 U.S. Dist. LEXIS 160390, at *10 (C.D. Cal. Sept. 18, 2018); *see also e.g. Europcar Italia, S.P.A. v. Maiellano Tours*, 156 F.3d 310, 315 (2d Cir. 1998) (rejecting appellant's argument that the arbitration award was based on a forged contract, and finding "whether the underlying contract that is the subject of the arbitrated dispute was forged or fraudulently induced – [is] a matter to be determined exclusively by the arbitrators."); *Research & Dev. Ctr. "Teploenergetika," LLC v. EP Int'l, LLC*, 182 F. Supp. 3d 556, 566 (E.D. Va. 2016) ("an issue is forfeited if a party could have raised such issue at arbitration but failed to do so, and such issue cannot be re-litigated before the district court considering enforcement of the arbitration award.").

The Central District of California's decision in *Tianjin*, discussed *infra.,* is directly on point. There, respondent alleged it never received proper notice of the arbitration and that the contract containing the arbitration clause was forged. *Tianjin,* 2018 U.S. Dist. LEXIS 160390, at *12 (C.D. Cal. Sept. 18, 2018). After

finding that notice was proper because it was reasonably calculated to notify respondent of the pending arbitration, the district court held that whether the contract was a forgery was a "matter[] to be determined exclusively by the arbitrator" and did not constitute "grounds under the Convention to deny confirmation of the Arbitral Award." *Id*. at *104.

The identical conclusion was reached by a New York district court in a dispute concerning the same petitioner as in *Tianjin* and a related respondent. *See Tianjin Port Free Trade Zone Int'l Trade Serv. Co. v. Tiancheng Chempharm Inc. USA*, 2018 U.S. Dist. LEXIS 90106, at *1 (E.D.N.Y. May 30, 2018). Respondent there raised the same notice and forgery defenses. The Eastern District of New York reached the same conclusion as the Central District of California, holding that "[i]f the party resisting confirmation of the arbitration award 'failed to raise the issue of the forged . . . agreement to the arbitrators, the issue is forfeited." *Id*. at *11 (citing *Nat'l Wrecking Co. v. Int'l Bhd. Of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir. 1993)).

Appellants read too much into cases holding that the court, rather than the arbitrator, must decide the threshold issue of whether an agreement to arbitrate exists. Appellant's Br. at 24-30. While these cases support the unremarkable proposition that arbitrability must be decided before a party is compelled to arbitrate, they misread the District Court's decision here to put it at odds with those decisions.

47

Contrary to Appellants' assertion, the District Court's holding does not require a party to attend an arbitration to which it did not agree, which is the subject of the cited cases. *See id.* at 29.

Appellants do not identify a single precedential case where the party opposing arbitration, who received proper notice yet failed to attend the arbitration, raised a successful challenge to the existence of an agreement to arbitrate during a subsequent recognition or enforcement proceeding governed by the Convention. *Buckeye, Three Valleys*, *Reichert*, *Rent-A-Ctr.*, *Ahlstrom*, *Gennarelli* and *Schultz* were all decided on a motion to compel arbitration, rather than a motion to enforce an arbitration award, and none were Convention cases. *See id.* at 24-28 (citing *Buckeye Check Cashing, Inc., v. Cardegna,* 546 U.S. 440 (2006); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1137 (9th Cir. 1991); *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1224 (9th Cir. 2022); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 63 (2010); *Ahlstrom v. DHI Mortg. Co.*, *L.P.*, 21 F.4th 631, 632 (9th Cir. 2021); *Gennarelli v. Charter Commc'ns, Inc.*, 2021 U.S. Dist. 207160, at *1 (C.D. Cal. Apr. 22, 2021); *Shultz v. TTAC Publ'g, LLC*, 2020 U.S. Dist. LEXIS 198834, at *1 (N.D. Cal. Oct. 26, 2020)). Moreover, in these cases, the parties appropriately challenged the validity of the agreement to arbitrate before the arbitration began. Waiver of a forgery defense was never at issue. Their holdings are inapplicable.

Appellants' citations to cases within the Convention context are equally unavailing. The parties in these cases did not waive their defense to the existence of the contract by failing to appear at arbitration. Their defenses were brought *prior to* or *during* the arbitration itself, unlike here, where Appellants waited until Appellee sought to enforce the arbitral award to raise their fraud claim. *See* Appellant's Br. at 25-26, 28-29 & n.5 (citing *Al-Qarqani v. Chevron Corp.*, 8 F.4th 1018, 1022 (9th Cir. 2021) (respondent objected that it was not party to the relevant contracts *during* the arbitration proceeding); *Sanford v. Member Works, Inc.*, 483 F.3d 956, 959 (9th Cir. 2007) (appellant disputed she had entered a contract with appellee upon a motion to compel arbitration); *Wang v. Kahn*, Case No. 20-CV-08033-LHK, 2022 U.S. Dist. LEXIS 1536, at *4, 29 (N.D. Cal. Jan. 4, 2022) (petitioner argued he never signed the applicable agreement mandating arbitration upon a motion to vacate an injunction enjoining the arbitration)). These cases do not state that a party cannot waive a forgery defense by failing to raise their challenge at an arbitration as to which they received proper notice.

Appellants cite only *one* opinion under the Convention where a court, upon a motion to enforce an arbitral award, found that the issue of the contract's existence was preserved for the court to determine, despite the parties' apparent waiver of said defense following their failure to appear at the arbitration. In *Exceed*, respondent, an American company, received notice of an arbitration proceeding in China and

failed to appear. *Exceed Int'l Ltd. v. DSL Corp.*, 2014 U.S. Dist. LEXIS 59913, at *34 (S.D. Tex. Apr. 30, 2014). The arbitration proceeded in China with respondent *in absentia*. *Id*. at *8. Petitioner attempted to enforce the award in Texas, and respondent denied it contracted to arbitrate their dispute. *Id*. at *12-13. In support of this denial, respondent presented evidence in the form of the signed contract, in English, with the arbitration clause stricken. *Id*. at *33-34. The court held the contract "unambiguously" did not contain "valid arbitration provisions," as the clauses were stricken from the contract. *Id*. at *6, 31-32.

The facts in *Exceed* are egregious: the petitioner presented a different version of the contract than the one in English that the respondent signed and could understand in support of enforcement of the award. Nothing like that happened here. Even though the burden is on Appellants to show that a defense under Article V exists, Appellee proffered extensive evidence to illustrate the validity of the underlying agreement. *Supra* § Statement of the Case at F. Appellants, consistent with their past practice when held to account for their debts, offered nothing but self-serving denials in response.

*Exceed*, a Texas district court case, is neither binding on this Court nor emblematic of U.S. courts' treatment of enforcement actions under the Convention, nor is it the law in this Circuit. This outlier decision, narrowly applicable to its facts, should not be misinterpreted to sanction Appellants' gambit. If the Court were to

follow the lead of the Southern District of Texas and deny enforcement of the Award based on Appellants' threadbare denials, a devastating new precedent would be set. One can easily imagine a scenario in which a defendant, fully aware of arbitration proceedings, willfully evades notice and instead uses that time to hide assets from creditors. Then, following an adverse award, the party could simply deny the agreement's validity by claiming forgery in response to enforcement, causing a redundant and potentially protracted evidentiary hearing in the United States. This result would be highly detrimental to international commerce and would undermine the Convention's goals of encouraging reciprocity and uniformity. Contracting parties would be less likely to agree to arbitration with U.S. companies; why would they if they may be forced to litigate in the U.S. courts even after obtaining an arbitral award? Further, allowing this gamesmanship would encourage jurisdictions to treat U.S. arbitral awards with similar disregard.

The Court should not accept Appellants' invitation to change the law in this Circuit. Upon receipt of proper notice and due to their failure to challenge the validity of the Personal Guarantee before or during the arbitration, Appellants have waived their forgery defense.

51

**B.**  **The Court Should Reject Appellants' Attempt at Collateral Litigation that Would Eviscerate the Purpose and Policies of the Convention**

Appellants' attempt to force collateral litigation in contravention of the Convention must be rejected. The purpose of the Convention is to encourage the expedient recognition and enforcement of commercial arbitration agreements across jurisdictions to ensure the efficient resolution of disputes. *See Ministry of Def. & Support v. Cubit Def. Sys., Inc.*, 665 F.3d 1091, 1098 (9th Cir. 2011) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974)); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 631 (1985) ("[the United States has an] emphatic federal policy in favor of arbitral dispute resolution . . . [and] since this Nation's accession in 1970 to the Convention . . . that federal policy applies with special force in the field of international commerce."). The collateral litigation of an arbitral ruling sought by Appellants undermines the benefits and purpose of the Convention and risks inviting retaliatory non-enforcement. *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 410-411 (2d Cir. 2009) ("Collateral and unilateral litigation of arbitrability—or any other issue pertinent to an arbitration, for that matter—undertaken in a foreign forum by a party to that arbitration in an attempt to protect itself from an adverse arbitral award would, if indulged, tend seriously to undermine the underlying scheme of the FAA and the New York Convention."). Refusing to enforce an international arbitration award invites "unseemly and

mutually destructive jockeying by the parties to secure tactical litigation advantages" and may "damage the fabric of international commerce and trade, and imperil the willingness and ability of businessmen to enter into international commercial agreements." *Scherk*, 417 U.S. at 516-17.

Appellants' position seeks to repeat the same failed litigation gambit they have tried in the past in a separate action in China. 2-ER-200, 206. They ask the court to rewind the work of the District Court and the Tribunal which have already reviewed evidence and made appropriate legal determinations as to whether Appellants' signatures were forged. Their challenge is not only legally improper, as it would require the Court overturn factual findings of the District Court that were not clearly erroneous, but it is also wholly contrary to the policy of comity that animates the Convention and mandates the speedy confirmation and enforcement of foreign arbitral awards in the United States. *Belship Navigation, Inc. v. Sealift, Inc.*, No. 1:95-CV-02748, 1995 U.S. Dist. LEXIS 10541, at *17 (S.D.N.Y. July 27, 1995) (holding the goal of the Convention "is to promote the enforcement of arbitral agreements and thereby facilitate international business transactions on the whole."). Appellants' forgery claim, a collateral attack on the District Court's holding, would weaken the United States' ability to carry out its obligations under the Convention and invite other countries to similarly second-guess the decisions of U.S. arbitral courts. If Appellants prevail on their novel theory that claiming forgery for the first

time in a court of secondary jurisdiction is sufficient to necessitate an evidentiary hearing or jury trial, respondents everywhere would be incentivized not to present such claims in arbitration proceedings—they would simply wait to challenge those proceedings until the prevailing party sought to enforce their award. Appellants' interpretation of the law renders the arbitration proceeding itself meaningless, which undermines the purpose and procedure of the Convention. It should be rejected.

### C. Even if the Forgery Defense Had Not be Waived and Could be Raised for the First Time in a Court of Secondary Jurisdiction, Appellants Cannot Meet Their Burden of Establishing a Triable Issue of Fact

Even if to the District Court could entertain Appellants' forgery theory at this late stage of the proceedings, the claim fails on its merits for two primary reasons.

*First*, Appellants allege that the District Court was required to hold a full evidentiary hearing or conduct a jury trial to decide the threshold issue of whether there was an agreement to arbitrate. App. Br. at 30. This is incorrect. Confirmation of a foreign arbitral award is a summary proceeding. The District Court is entitled to proceed without a full hearing, and it had no reason not to. Appellants failed to present evidence to the District Court sufficient to create a triable issue of fact as to the validity of the Personal Guarantee. It is axiomatic that "a party to an arbitration agreement cannot obtain a jury trial merely by demanding one." *Jones v. GMC*, 640 F. Supp. 2d 1124, 1145-46 (D. Ariz. 2009) (quoting *Dillard v. Merrill Lynch*, 961

F.2d 1148, 1154 (5th Cir. 1992)). Rather, there must be some genuine issue of fact to be tried before a jury. *Id.*

Where the party seeking to enforce an arbitration award establishes that an agreement exists and applies to the dispute in question, it is the opposing party's burden to rebut that evidence by presenting a genuine issue of material fact suggesting the contract did not exist. *See Telenor Mobile*, 584 F.3d at 407 (holding when "the making of the agreement to arbitrate is placed in issue . . . the court must set the issue for trial, so long as the party putting the agreement to arbitrate in issue . . . present[s] some evidence of in support of its claim.") (internal citations omitted). In *Telenor*, respondent alleged the arbitration panel erred when it failed to give preclusive effect to a Ukrainian court's judgment that the applicable contract at issue was not arbitrable and by failing to require a trial on the arbitrability issue in the district court. *Id*. at 400-401. The district court dismissed these defenses and the Second Circuit affirmed after finding the lower court had "colorable reasons" for rejecting both arguments. *Id*. In so concluding, the Second Circuit Court held respondent's sole "self-serving declaration" was insufficient to indicate the district court committed clear error by ignoring the Ukrainian court's arbitrability ruling, and that respondent's failure to present even "some evidence" of a dispute as to existence of a valid agreement to arbitrate was insufficient to warrant a trial. *Id*. 409 n.8, 411.

55

Other courts in this Circuit and beyond have similarly held that, where a party establishes that an agreement exists, the party opposing enforcement must proffer sufficient evidence if it wishes to raise a triable issue of fact. *See, e.g.*, *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of fact."); *Sundquist v. Ubiquity, Inc.*, 2017 U.S. Dist. LEXIS 186667, at *13 (S.D. Cal., Jan. 17, 2017) (holding that defendants' "self-serving, conclusory declaration," without more, was insufficient to raise a material question of fact). *Cf Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992) (finding that to challenge the existence of an agreement to arbitrate, "some evidence should be produced to substantiate the denial," and that the concession of the opposing party that the agreement was not signed was sufficient) (internal citations omitted); *Synergy Homecare Franchising, LLC v. Aviatech, LLC*, 2013 U.S. Dist. LEXIS 202823, at *6-7 (D. Ariz. Mar. 12, 2013) (finding that plaintiff properly placed the validity of arbitration agreement at issue by not only denying that it existed, but by also proffering declarations from its executives, as well as email exchanges with defendant).

Appellants cite several opinions in support of their contention that the District Court was required to hold a hearing to determine their forgery claim, none of which is applicable. The parties in each case submitted more than self-serving declarations

56

to support their requests for a hearing. *See Wang,* 2022 U.S. Dist. LEXIS at *34 (proffering several declarations including sworn testimony from a handwriting expert); *Chime Inst. v. Haney*, 2013 U.S. Dist. LEXIS 202944, at *10 (C.D. Cal. Oct. 28, 2013) (proffering multiple declarations from board members and employees); *GIB, LLC v. Salon Ware, Inc.*, 634 F. App'x 610, 611 (9th Cir. 2016) (holding a sworn declaration, email correspondence, and the undisputed fact that GIB never signed the written agreement was sufficient proof of the non-existence of the underlying contract to arbitrate). In one case, concerning an arbitration falling outside the context of the Convention, the parties each presented little more than contradictory declarations in support of their claims, which the court determined were of sufficiently equal weight to raise a triable issue of fact as to the existence of the contract. *Gonzales v. Food Mgmt. Partners, Inc.*, 2020 U.S. Dist. LEXIS 137848, at *10 (C.D. Cal. Aug. 3, 2020). Here, Appellee submitted overwhelming evidence that the Personal Guarantee was valid, in the form of detailed declarations, an affidavit containing witness testimony, signature samples, records from a prior case where Appellant Yan raised the same dubious fraud defense, and a judicial appraisal of Yan's signature. Appellants' self-serving declarations pale in comparison to this mountain of affirming evidence. Much like *Telenor*, Appellants' statements are insufficient to raise a triable issue of fact as to the existence of a

contract to arbitrate, and thus the District Court was correct to deny Appellants' request for a jury trial or hearing to resolve that issue.

*Second*, the validity of the Personal Guarantee was decided as a matter of fact by the District Court, and factual findings underlying the District Court's decision can only be reversed for clear error. *See Woods*, 78 F.3d at 427. Appellants claim the District Court committed clear error when it found that "Respondents affixed their personal seals and signatures to the respective Personal Guarantees," because "Zhongtie abandoned that statement, the document on its face has no seals, and there is an unresolved factual dispute regarding the genuineness of the signatures." Br. at 32.

Appellants are wrong. The fact that there were no personal seals on the Personal Guarantee does not disturb the fact that Appellants affixed their signatures to the agreement. Appellee did not abandon anything; it simply clarified on reply that the Personal Guarantee executed by Appellants only included their signatures, rather than their seals. 2-ER-60 ¶ 33. There was no clear error in the District Court to determining that Appellants properly executed the Personal Guarantee based on the contract itself and supportive statements proffered by Appellee's attorney Mr. Tao—who witnessed Appellants sign the Personal Guarantee. *Wong to Yick Wood Lock Ointment v. Madison One Acme*, CV 14-07645 SJO (FFMx), 2015 U.S. Dist. LEXIS 200372, at *13 (C.D. Cal. Apr. 21, 2015) ("courts have confirmed arbitral

awards where the arbitration documents at issue were sworn and certified by the petitioner's counsel."). The District Court did not err in declining to credit Appellants' own self-serving declarations, given that they provided no additional evidence beyond their own summary denials that they signed the Personal Guarantee.

Nor did the District Court abuse its discretion in denying Appellants' motion for leave to file a sur-reply and attendant declarations attempting to refute the testimony of attorney Mr. Tao and Appellant Yan's affiliation with relevant corporate entities including Borrower, Zhengyue, and Youfu.[7] The denial was appropriate because the District Court properly found it "need not rely on any of the issues raised" in the proposed sur-reply to enforce the Award. *See Finley v. Fax*, 683 Fed. Appx. 630, 631 (9th Cir. 2017) (holding that the "district court did not abuse its discretion in denying [plaintiff's] request for leave to file a sur-reply because the district court reviewed the briefing and found no new issues raised in defendants' reply that necessitated further argument."). This was appropriate given Appellants' sur-reply contained only dubious declarations authored by Appellants with no corroboration. The District Court was within its discretion to refuse to credit

---

[7] *Brewster*, 699 Fed. Appx. at 706 (holding district court did not abuse its discretion by denying motion to file sur-reply and stating that a "court reviews for abuse of discretion a district court's decisions concerning its management of litigation.") (citing *Preminger v. Peake*, 522 F.3d 757, 769 n.11 (9th Cir. 2008)).

these declarations considering Appellee's substantial evidentiary submissions to the contrary. *See supra* § Statement of the Case at F.

The District Court, upon considering this factual dispute and the evidence proffered, determined that Appellants had affixed their signatures to the Personal Guarantee. Thus, the District Court's finding of fact did not constitute clear error, and, as a result, should not be disturbed.

## CONCLUSION

Appellee respectfully requests that the Court affirm the District Court's January 12, 2024 ruling confirming and enforcing the Award, and dismiss this appeal.

Dated:  August 12, 2024

MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO, P.C.

/s/ Kaitlin R. Walsh
Daniel T. Pascucci
Kaitlin R. Walsh
Emily Kanstroom Musgrave
Michael J. Godwin

*Attorneys for Appellee Zhongtie
Dacheng (Zhuhai) Investment
Management Co., Ltd.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)**  | 24-736 |

The undersigned attorney or self-represented party states the following:

( • )  I am unaware of any related cases currently pending in this court.

( )  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

( )  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

| |
| --- |
| |

**Signature** | /s/ Kaitlin R.Walsh |  **Date** | 8/12/2024 |

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 17**                    *New 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 24-736

I am the attorney or self-represented party.

**This brief contains** 13,999 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Kaitlin R. Walsh  **Date** 8/12/2024
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*