**Docket No. 24-736**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

———— • ————

ZHONGTIE DACHENG (ZHUHAI) INVESTMENT MANAGEMENT CO LTD,

*Petitioner - Appellee,*

v.

JINGGANG YAN; LIANG XIUHONG,

*Respondents - Appellants.*

_____

*Appeal from a Decision of the United States District Court for the Central District of California,
No. 8:22-cv-00461-KK-ADS · Honorable Kenly Kiya Kato*

## REPLY BRIEF OF APPELLANTS

David M. Cooper
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

William R. Sears, IV
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000

*Counsel for Respondents - Appellants*

                    PRINTED ON RECYCLED PAPER 

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ......................................................................................1

ARGUMENT ...........................................................................................3

I.    THE DISTRICT COURT ERRED IN CONFIRMING THE AWARD BECAUSE THE LACK OF NOTICE OF THE ARBITRATION VIOLATED DUE PROCESS .......................................................3

    A.   Zhongtie Provides No Legal Basis For Its Theory That Notice Need Not Satisfy The Due Process Requirements Of *Jones v. Flowers* ...............................................................................3

    B.   Zhongtie Fails To Show How The Commission Satisfied "Proper Notice" By Doing Nothing After Learning The Mailings Were Undelivered ...............................................6

    C.   Zhongtie Identifies No Finding Or Evidence To Show That Appellants Received Actual Notice .................................11

II.   THE DISTRICT COURT ERRED IN HOLDING THAT APPELLANTS' CHALLENGE TO THE EXISTENCE OF THE AGREEMENT WAS WAIVED BECAUSE IT WAS NOT RAISED IN THE ARBITRATION ................................................16

    A.   Zhongtie Fails To Confront That The Court Must Decide Whether Appellants Agreed To Arbitrate And Appellants Cannot Be Required To Arbitrate If They Never Agreed To Do So ........................................................................................16

    B.   Zhongtie Presents No Legal Or Factual Basis For This Court To Resolve The Factual Dispute Over Whether Appellants Signed The Agreements ...................................................................21

CONCLUSION ......................................................................................26

CERTIFICATE OF COMPLIANCE ......................................................27

CERTIFICATE OF SERVICE ...............................................................28

# TABLE OF AUTHORITIES

## Cases

*Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*,
  21 F.4th 631 (9th Cir. 2021) .............................................................................16

*Al-Qarqani v. Chevron Corp.*,
  8 F.4th 1018 (9th Cir. 2021) ......................................................................16, 17

*Arb. Between Exceed Int'l Ltd. v. DSL Corp.*,
  2014 WL 1761264 (S.D. Tex. Apr. 30, 2014) .............................................17, 18

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) ..........................................................................................17

*Barrows v. Brinker Rest. Corp.*,
  36 F.4th 45 (2d Cir. 2022) ................................................................................24

*Boykin v. Fam. Dollar Stores of Mich., LLC*,
  3 F.4th 832 (6th Cir. 2021) ...............................................................................24

*Castro v. Tri Marine Fish Co. LLC*,
  921 F.3d 766 (9th Cir. 2019) ............................................................................20

*Chastain v. Robinson-Humphrey Co.*,
  957 F.2d 851 (11th Cir. 1992) ..........................................................................25

*Chime Inst. v. Haney*,
  2013 WL 12114616 (C.D. Cal. Oct. 28, 2013) ...........................................23, 24

*China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*,
  334 F.3d 274 (3d Cir. 2003) .............................................................................19

*China Nat'l Metal Prod. Imp./Exp. Co. v. Apex Digital, Inc.*,
  379 F.3d 796 (9th Cir. 2004) ..............................................................................3

*De Fontbrune v. Wofsy*,
  39 F.4th 1214 (9th Cir. 2022) ......................................................................2, 5, 9

*Europcar Italia, S.P.A. v. Maiellano Tours*,
  156 F.3d 310 (2d Cir. 1998) .......................................................................18, 19

*FTC v. Publ'g Clearing House, Inc.*,
  104 F.3d 1168 (9th Cir. 1997) ............................................................25

*GIB, LLC v. Salon Ware, Inc.*,
  634 F. App'x 610 (9th Cir. 2016) ......................................................23

*Gonzalez v. Food Mgmt. Partners, Inc.*,
  2020 WL 4437267 (C.D. Cal. Aug. 3, 2020) ...............................23, 24

*Grand Rapids Die Casting Corp. v. NLRB*,
  831 F.2d 112 (6th Cir. 1987) ..............................................................12

*Guarino v. Productos Roche S.A.*,
  839 F. App'x 334 (11th Cir. 2020) .....................................................10

*Huzhou Chuangtai Rongyuan Inv. Mgmt. P'ship v. Qin*,
  2024 WL 1193065 (2d Cir. Mar. 20, 2024)........................................5

*Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte
  Int'l GmbH*,
  921 F.3d 1291 (11th Cir. 2019) ..........................................................12

*Jones v. Flowers*,
  547 U.S. 220 (2006)........................................................2, 3, 4, 5, 6, 7

*Ma v. Fang*,
  2022 WL 1078867 (C.D. Cal. Mar. 2, 2022)........................................8

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950).............................................................................4

*N. Pac. Ry. Co. v. Sauk River Lumber Co.*,
  82 F.2d 519 (9th Cir. 1936) ................................................................13

*NLRB v. Yellow Freight Systems, Inc.*,
  930 F.2d 316 (3d Cir. 1991) ...............................................................12

*Polimaster Ltd. v. RAE Systems, Inc.*,
  623 F.3d 832 (9th Cir. 2010) ...............................................................3

*Power of Fives, LLC v. B&R Enterprises, Inc.*,
  No. 23-15152, 2023 WL 8613494 (9th Cir. Dec. 13, 2023) ...............13

iv

*Pullman-Standard v. Swint*,
456 U.S. 273 (1982)......................................................................22

*Reichert v. Rapid Invs., Inc.*,
56 F.4th 1220 (9th Cir. 2022) ......................................................16

*Research & Dev. Ctr. "Teploenergetika," LLC v. EP Int'l, LLC*,
182 F. Supp. 3d 556 (E.D. Va. 2016) ...........................................19

*Residents of Gordon Plaza, Inc. v. Cantrell*,
25 F.4th 288, 296 (5th Cir. 2022) ................................................14

*Sanford v. MemberWorks, Inc.*,
483 F.3d 956 (9th Cir. 2007) .......................................................16

*Saucillo v. Peck*,
25 F.4th 1118 (9th Cir. 2022) ......................................................22

*Spence v. South*,
1997 WL 51532 (9th Cir. 1997) .....................................................8

*Sundquist v. Ubiquity, Inc.*,
2017 WL 3721475 (S.D. Cal., Jan. 17, 2017) ..............................25

*Telenor Mobile Commc'ns AS v. Storm LLC*,
584 F.3d 396 (2d Cir. 2009) ........................................................24

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
925 F.2d 1136 (9th Cir. 1991) ..........................................2, 17, 22

*Tianjin Port Free Trade Zone Int'l Trade Serv. Co. v. Tiancheng
Chempharm, Inc. USA*,
2018 WL 2436990 (E.D.N.Y. May 30, 2018), *aff'd*, 771 F. App'x
36 (2d Cir. 2019).........................................................................19

*Tianjin Port Free Trade Zone Int'l Trade Serv. Co. v. Tiancheng Int'l,
Inc. USA*,
2018 WL 4502497 (C.D. Cal. Sept. 18, 2018) .......................10, 19

*Wang v. Kahn*,
2022 WL 36105 (N.D. Cal. Jan. 4, 2022)......................................23

*Yukos Capital S.A.R.L. v. OAO Samaraneftegaz*,
    963 F. Supp. 2d 289 (S.D.N.Y. 2013) ...................................................................8

*Zeiler v. Deitsch*,
    500 F.3d 157 (2d Cir. 2007) .............................................................................20

## INTRODUCTION

Appellee Zhongtie Dacheng (Zhuhai) Investment Management Co. Ltd. ("Zhongtie") fails to confront two fundamental legal principles that the Supreme Court and this Court have established: (1) there is no proper notice when mailed notice is returned undelivered, and nothing more is done; and (2) a party cannot be forced to arbitrate if it did not agree to do so, and whether it agreed is a question for the court, not the arbitrator. As Appellants explained in their opening brief ("OB"), those principles are dispositive here. It is undisputed that the only attempted notice were mailings to an old address of Appellants, which were returned to the arbitration commission ("Commission") as undeliverable. And the district court refused to resolve the factual dispute over whether Appellants ever signed the agreements at issue. Rather than confront these points, Zhongtie's Answering Brief ("AB") relies largely on arguments that the district court did not adopt and requests deference to findings that do not exist.

*First*, Zhongtie posits that Appellants controlled other entities that received notice of the arbitration, and thus Appellants can be assumed to have received notice themselves. But neither the Commission nor the district court found that Appellants controlled those entities at the time of the arbitration, and neither remotely suggested that Appellants received notice through them. Indeed, there is no evidence that Appellants actually received notice of the arbitration, Appellants

expressly refuted that they did, and that is why the district court relied solely on the mailing for its conclusion on notice. But the court ignored that the mailing was returned undeliverable and the cases establishing that the mailing therefore did not suffice. *See Jones v. Flowers*, 547 U.S. 220, 230 (2006); *De Fontbrune v. Wofsy*, 39 F.4th 1214, 1232 (9th Cir. 2022). Zhongtie cannot save this erroneous legal ruling with an alternative argument for actual notice that has no factual support.

*Second*, Zhongtie asserts that Appellants signed the agreements at issue. But the district court did not address, let alone resolve, the factual dispute on this issue because it held that Appellants were required to raise it in the arbitration. As to that holding, Zhongtie presents no legal support for the idea that a party can be required to arbitrate the issue of whether it agreed to arbitrate in the first place. Indeed, this Court has expressly rejected this nonsensical proposition. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991). Zhongtie also presents no legal basis for this Court to address the unresolved factual dispute over whether Appellants' signatures were forged in the agreements. There has been no hearing or other opportunity to develop the evidence, and the evidence that does exist—competing declarations—presents a dispute of material fact that cannot be resolved at this stage. Zhongtie notes that confirmation of an arbitration award is supposed to be a summary proceeding, but courts consistently recognize that factfinding is proper (and required) to determine

whether there was an agreement to arbitrate. Zhongtie cites no court adopting the radical conclusion a court should summarily confirm an award in an arbitration that a party had no notice of and never agreed to, which is exactly what occurred here and which offends both the New York Convention and basic principles of due process.

## ARGUMENT

As Zhongtie recognizes (AB 25), "this Court reviews *de novo* … 'whether the party established a defense under the Convention.'" (quoting *China Nat'l Metal Prod. Imp./Exp. Co. v. Apex Digital, Inc.*, 379 F.3d 796, 799 (9th Cir. 2004)); *see also, e.g.*, *Polimaster Ltd. v. RAE Systems, Inc.*, 623 F.3d 832, 836 (9th Cir. 2010) ("We review de novo whether a party established a defense to enforcement of an arbitration award under the New York Convention."). Zhongtie errs in asking for deference to the district court because, as discussed below, the district court made errors of law that are likewise subject to *de novo* review and Zhongtie relies on supposed factual findings of the district court that do not exist.

## I.   THE DISTRICT COURT ERRED IN CONFIRMING THE AWARD BECAUSE THE LACK OF NOTICE OF THE ARBITRATION VIOLATED DUE PROCESS

### A.   Zhongtie Provides No Legal Basis For Its Theory That Notice Need Not Satisfy The Due Process Requirements Of *Jones v. Flowers*

As Appellants explained (OB 13-15), Article V, § 1(b), of the New York Convention requires "proper notice," and courts uniformly hold that notice is not

proper if it fails to comply with due process under the U.S. Constitution. Zhongtie does not dispute this point and concedes (AB 40) that notice must be "'reasonably calculated, under all the circumstances' to apprise Appellants of the Arbitration" (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Nonetheless, Zhongtie argues (AB 39-41) that this Court need not apply the due process requirements for notice that the Supreme Court set forth in *Jones v. Flowers*, 547 U.S. 220 (2006). However, *Jones* is binding law on the constitutional requirements for notice, and it is directly on point here.

Zhongtie notes (AB 39) that *Jones* did not arise in the context of the New York Convention, but that is irrelevant, as *Jones* expressly applied due process standards and it is undisputed that those standards apply to a notice defense under the New York Convention. Zhongtie suggests (AB 40) that *Jones* is somehow different than the *Mullane* standard for due process. But *Jones* expressly adopts that very standard. 547 U.S. at 226 ("[D]ue process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'") (quoting *Mullane*, 339 U.S. at 314). *Jones* then applies that standard and concludes it is unsatisfied where a mailed notice is returned as undelivered and the sender does nothing more. *Id.* at 226-34.

Zhongtie also cites nothing for the suggestion (AB 39) that *Jones* should be limited to the context of notice of a tax sale. *Jones* has been widely applied outside that context, including by this Court. *See De Fontbrune v. Wofsy*, 39 F.4th 1214, 1232 (9th Cir. 2022) (holding notice of French proceedings inadequate because "the issuance of a certificate of non-service [leaves] no doubt that service ha[s] failed" and "thus trigger[s] an obligation to take . . . further steps to give notice"). Indeed, the Second Circuit has applied *Jones* in a New York Convention case. *See Huzhou Chuangtai Rongyuan Inv. Mgmt. P'ship v. Qin*, 2024 WL 1193065, at *1-2 (2d Cir. Mar. 20, 2024).[1] The reasoning of *Jones* was not limited to a tax sale, but based on the straight-forward proposition that notice is *not* reasonably calculated to apprise the party if a letter is returned undelivered and nothing more is done because no one who actually wanted to provide notice would do "nothing" after finding out that the mailing failed to reach the intended recipient. 547 U.S. at 230 ("Although the State may have made a reasonable calculation of how to reach Jones, it had good reason to suspect when the notice was returned that Jones was no better off than if the notice had never been sent.").

---

[1] *Huzhou* provides a useful and telling contrast to the facts here. In *Huzhou*, after an arbitration tribunal's initial attempt to notify the party went undelivered, it took *additional* steps, sending a further notice that *was* delivered, thereby satisfying *Jones*. *Huzhou*, 2024 WL 1193065, at *2. Here, in contrast, there were no such additional steps and no completed delivery.

**B.      Zhongtie Fails To Show How The Commission Satisfied "Proper Notice" By Doing Nothing After Learning The Mailings Were Undelivered**

The relevant facts here are undisputed (OB 7-8, AB 2, 12-13):   The Commission sent notice to Appellants' former address in China, the mail was returned as undeliverable, and the Commission made no further effort to give notice to Appellants and conducted the arbitration in their absence.   Zhongtie's efforts to portray these circumstances as "proper notice," consistent with due process, conflict with binding precedent.

*First*, Zhongtie asserts (AB 2) that the mailed "notice of the arbitration sent to Appellants was 'proper,' because it was 'reasonably calculated' to apprise them of the arbitration."   *See also* AB 32 ("That the notices were returned as undelivered does not change the result that notice was proper.").   This is the opposite of the holding of *Jones* (*see* OB at 20), which held that a mailing is no longer "reasonably calculated" to apprise Appellants as a matter of law after being returned undeliverable with notations that Appellants had moved.   Zhongtie also relies (AB 30) on the idea that the Commission mailed notice multiple times, but every one of these pieces of mail was sent to the same place and returned as undeliverable, stamped with language that read "Unknown new address after recipient relocation," "No such person at location," and "Return to Receiving and Sending Bureau."   2-ER-81–86.   Indeed, that the Commission made subsequent attempts to

6

provide notice to the *same invalid address after learning* that Appellants did not reside and could not be reached there only confirms that there was no reasonable attempt to actually give notice. Zhongtie argues (AB 40) that "nowhere in the *Jones* opinion does the Court suggest that actual notice is required[.]" But this is a red herring, as Appellants have never suggested a requirement of actual notice. Rather, the requirement is notice "reasonably calculated" to apprise the party, and returned-undelivered mail, without more, fails to meet this standard.

*Second*, Zhongtie argues (AB 10-11, 30) that Appellants had a duty to maintain and update their address in China and failed to do so. But as Appellants explained (OB 20) and Zhongtie ignores, the Supreme Court expressly rejected this argument as excusing lack of fair notice. *See Jones*, 547 U.S. at 232 ("failure to comply with a statutory obligation to keep [an] address updated" does not waive due process rights, and does not change the unreasonableness of doing nothing after learning notice had failed). Similarly, Zhongtie asserts (AB 1, 28-29) that notice was provided consistent with the Commission's rules, but the Commission's rules cannot override the New York Convention, and *Jones* rejected the idea that an entity following its own rules satisfies the due process requirements for providing notice. 547 U.S. at 226.

*Third*, Zhongtie argues (AB 41) that the Commission took every practicable step it could to notify Appellants. But in reality, the *only* step it took was to send

7

mail that was returned undelivered. Zhongtie states (AB 41-42) that the Commission took additional steps by notifying other entities that Zhongtie claims that Appellants controlled. However, the Commission did *not* suggest that it was attempting to provide notice to Appellants through other entities. Nor did the Commission ask the other entities whether they had provided notice to Appellants and, if not, to assist in providing notice to Appellants. Simply put, the Commission and the district court relied *only* on the mailings to support notice to Appellants. 1-ER-5-8, 3-ER-422. Zhongtie's suggestion that notice to other entities was actually a further attempt to provide notice to Appellants is wholly Zhongtie's invention. The due process requirement to provide notice is not satisfied by providing notice to *someone else*. *See Spence v. South*, 1997 WL 51532, at *2 (9th Cir. 1997) ("providing notice only to someone else cannot be said to have been 'reasonably calculated' to apprise" apprise interested party "of the action").[2] In any event, as discussed *infra* at 11-12, the entire premise for

_____

[2] Zhongtie cites (AB 33-34) *Yukos Capital S.A.R.L. v. OAO Samaraneftegaz*, 963 F. Supp. 2d 289 (S.D.N.Y. 2013), but there, the arbitration commission believed that the relevant party had received notice and was participating in the arbitration by way of its representative—and the party admitted it received some of the notices. *Id.* at 295-97. Similarly, in *Ma v. Fang*, 2022 WL 1078867, at *4 (C.D. Cal. Mar. 2, 2022), the arbitration commission provided notice through the party's representatives after initial attempts at service failed. *Id.* at *4. Here, in contrast, it is undisputed that Appellants did not participate, the Commission recognized they were not participating, and the Commission did not state or suggest in any way that notice was being provided to Appellants through other entities. 3-ER-319.

Zhongtie's argument is false, as the Commission and district court did not find that Appellants controlled, let alone received notice from, any other entity.

Zhongtie also states (Br. 41) that doing nothing after sending undelivered mail can be acceptable, but that is true only if there is no other practicable option. As this Court has explained, the knowledge of unsuccessful service "triggered an obligation to take *any available and reasonable further steps* to give notice." *De Fontbrune*, 39 F.4th at 1232-33 (emphasis added). Zhongtie cites no case where a court found that no available options existed, other than sending undelivered mail, and this case should not be the first. There is no reason—other than Zhongtie's unfounded speculation—to believe that the Commission ever considered the question of alternative avenues, let alone determined that no reasonable ones existed. As Appellants explained (OB 18), there were many options available to the Commission, and Zhongtie fails to explain why they were not practicable at least to attempt. Indeed, if Zhongtie were correct that Appellants had an ongoing relationship with Fukong Interactive Entertainment Co. Ltd. ("Fukong") or Shanghai Zhongji Enterprise Group Co., Ltd. ("Zhongji"), then it would have been simple to have those entities contact—or at least *attempt* to contact—Appellants.

Zhongtie suggests (AB 32) a "manhunt" was not required, and of course it was not. Nor was it necessary, as Appellants were living openly and legally in the United States, and could easily have been found if the Commission had tried—just

as Appellants were found in this U.S. enforcement action. Zhongtie suggests (AB 2, 43) that Appellants intentionally evaded notice and made themselves hard for the Commission to find, but they cite *nothing* to support that rampant (and false) speculation. Regardless, the question is not whether further efforts to notify Appellants would have been successful, but whether any further efforts were attempted; none were.

*Finally*, Zhongtie relies (AB 28-33) on a handful of cases that found proper notice, but none involved learning that attempted notice failed and doing zero in response to this new information. Zhongtie cites (AB 28, 32) *Guarino v. Productos Roche S.A.*, 839 F. App'x 334 (11th Cir. 2020), but as Appellants explained (OB 20-21) and Zhongtie ignores, after notice by mail failed, the arbitration center attempted notice in several other ways, including by email that did *not* bounce back as undelivered. *Id.* at 340. Zhongtie also relies (AB 27-28) on *Tianjin Port Free Trade Zone Int'l Trade Serv. Co. v. Tiancheng Int'l, Inc. USA*, 2018 WL 4502497, *4 (C.D. Cal. Sept. 18, 2018), which is likewise inapposite. In *Tianjin*, the court held there was "proper notice" where the arbitration commission "sen[t], by express mail service, at least four notices of the arbitration proceeding" to the respondent's "correct address," 2018 WL 4502497 at *4, and "verified" that each notice was "duly served on" the respondent, *id.* at *2.

Here, as discussed, not only was there no attempt at verification of delivery, but the Commission knew that the notices were not delivered.

### C. Zhongtie Identifies No Finding Or Evidence To Show That Appellants Received Actual Notice

Zhongtie's reliance on an actual-notice theory, which the district court did not adopt, is baseless. To begin with, Zhongtie ignores that the district court did not find that Appellants received actual notice, but instead found only that Appellants received "proper notice" because the undelivered mail was sent "to [Appellants'] last known address." 1-ER-7. Zhongtie also ignores Appellants' uncontested declarations establishing that they did not receive actual notice. 2-ER-227 ¶8; 2-ER-238 ¶8. Instead, Zhongtie posits that because Appellants supposedly controlled Fukong and Zhongji, they must have received actual notice of the arbitration.

However, neither the Commission nor the district court found that Appellants controlled Fukong or Zhongji at the time of the arbitration. As to the Commission, Zhongtie cites 3-ER-313-14 for the claim (AB 41) that "the Commission sent notice of the Initial Arbitration and Arbitration to Borrower and Zhongji, companies which it conclusively found Appellant Yan controls." But those record pages say nothing about Yan supposedly controlling these entities. 3-ER-313-14. Zhongtie also cites (AB 35-36) 3-ER-322, but that page notes only that Yan "held 95% of [Zhongji's] equity" "when the 'Loan Contract' was signed,"

11

3-ER-322, and that Fukong "recognized that [Appellant Yan] was still the actual controller of [Fukong] in the trial," *id.* Thus, the only finding is that Yan had *previously* controlled Zhongji and that Fukong *claimed* Yan retained control. The Commission therefore did not find that Yan actually controlled Zhongji or Fukong at the time of the arbitration—or that Yan received notice through them. In any event, there would be no deference to any supposed Commission finding on this point, given that the arbitration award is void for lack of notice in the first place and that Yan did not have the opportunity to present evidence on this (or any other) issue in the arbitration. *See NLRB v. Yellow Freight Systems, Inc.*, 930 F.2d 316, 322 (3d Cir. 1991) ("deference to an arbitrator's factfinding is not warranted in cases where 'the arbitrator was not fully apprised of the facts'") (quoting *Grand Rapids Die Casting Corp. v. NLRB*, 831 F.2d 112, 116 (6th Cir. 1987)).[3]

The district court likewise did not find Yan controlled the other entities or that he received actual notice because those entities received notice. The district court's notice discussion makes no mention of Fukong or Yan's relationship to that company. 1-ER-7-8. The *only* mention of a supposed connection between Yan

---

[3]   The only case Zhongtie cites (AB 36) on this issue concerned a public-policy defense to enforcement, not a question whether the arbitration was void in the first place due to lack of notice. *See Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GmbH*, 921 F.3d 1291, 1305 (11th Cir. 2019) ("public policy would require the federal courts to enforce the parties' agreement to arbitrate that claim" of fraud).

and the other entities is a single sentence in the factual background section of the order that states: "Respondent Yan is the 'sole director and shareholder' of two corporations, Shanghai Fukong Interactive Entertainment Co. Ltd. ('the Borrower') and Zhongji Enterprise Group Co., Ltd., (collectively 'the Corporate Parties')." 1-ER-5 (quoting Zhongtie's Petition, 3-ER-470 ¶5). This quoting of Zhongtie's Petition in the background, without any discussion of the evidence on this issue, is not remotely a finding of fact. *See, e.g.*, *Power of Fives, LLC v. B&R Enterprises, Inc.*, No. 23-15152, 2023 WL 8613494, at *2 (9th Cir. Dec. 13, 2023) ("Although the background section of the district court's order set forth Appellant's allegations," that did not deny the existence of a material dispute of fact where "the order's discussion section did not discuss any specific factual allegations" on the issue.); *N. Pac. Ry. Co. v. Sauk River Lumber Co.*, 82 F.2d 519, 521 (9th Cir. 1936) ("This, obviously, is a mere statement of plaintiff's contention. It is not a finding of any fact."). This lone sentence in the background section also does not indicate *when* Yan supposedly controlled these entities, and thus is irrelevant to the question whether Yan had control—and thus supposedly had actual notice, again a supposition the court did *not* make—at the time of the arbitration.

Furthermore, the evidence does not support a finding that Yan controlled other entities at the time of the arbitration, and any conclusion to the contrary (though none was made) would be clearly erroneous. Zhongtie identifies no

13

evidence that rebuts Appellants' sworn statements refuting control and notice. 2-ER-37 at ¶6 ("I have never served as a director or as an officer of Fukong. I have also never participated in the day-to-day management of Fukong. I had no involvement in or knowledge of Fukong's supposed participation in the proceedings initiated by Petitioner before the Beijing Arbitration Commission.").[4] Zhongtie cites (AB 10) notice of a securities investigation, but that notice is dated "January 19, 2018," and thus says nothing about control at the time of the arbitration. 2-ER-66. The same is true of Zhongtie's citation (AB 11) to "a public announcement on June 13, 2018." *See* 2-ER-103, 108. Zhongtie likewise misrepresents the record when it asserts (AB 11-12) that "[o]n July 17, 2018, Suzhou Zhengyue, a company controlled by Appellant Yan, signed an agreement

---

[4] While this statement came in support of Appellants' sur-reply, as Appellants explained (OB 22-23), this was the first opportunity to address the issue, as Zhongtie had only addressed actual notice—not constructive notice through supposedly controlled entities—in its opening brief before the district court. Zhongtie argues (AB 35, 38 n.6, 59) that the court properly denied leave to file a sur-reply, but Zhongtie ignores that the district court held that it "need not rely on any of the issues raised in Respondents' proposed Sur-Reply," 1-ER-8, because it decided notice based solely on the mailing. The district court did not suggest—and it would be improper to hold—that this Court should address an alternative ground solely using the evidence Zhongtie first raised in its reply while ignoring the evidence Appellants presented in sur-reply in response to Zhongtie's new theory. *See, e.g.*, *Residents of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 296 (5th Cir. 2022) ("[A] district court abuses its discretion when it considers new arguments raised for the first time in a reply brief without providing the non-movant an adequate opportunity to respond prior to a ruling.") (internal quotation omitted). In any event, the most reasonable course is simply to remand to the district court to resolve the factual issues it did not address.

with [Zhongtie] …. 3-ER-321-22." The cited pages say *nothing* about Suzhou Zhengyue being controlled by Yan, and the record evidence directly contradicts such an assertion. 2-ER-36 ¶¶4-5 ("I also have never served as a director or as an officer of Suzhou Zhengyue or Youfou. I have never participated in the day-to-day management of Suzhou Zhengyue or Youfou, both before and after my emigration to the United States. I therefore had no involvement in or knowledge of the supposed settlement agreement and related payment to which Suzhou Zhengyue was supposedly a party[.]"). The same is true as to Zhongtie's claim (AB 41) that Yan controlled Unifull, as the record citations provide no support for this proposition. 3-ER-313-14; 2-ER-135-36; 2-ER-146; 1-ER-5. Finally, Zhongtie points to the affidavit of a so-called "witness" (AB 16) who is a paid agent of Zhongtie, and whose down-to-the-minute declaration is so detailed as to be obviously incredible. Again, notably, the district court did not rely on this evidence in any way or find actual notice. Indeed, regardless of the doubtful evidence of control, there is no evidence of any kind that Appellants actually knew of the arbitration.

## II. THE DISTRICT COURT ERRED IN HOLDING THAT APPELLANTS' CHALLENGE TO THE EXISTENCE OF THE AGREEMENT WAS WAIVED BECAUSE IT WAS NOT RAISED IN THE ARBITRATION

### A. Zhongtie Fails To Confront That The Court Must Decide Whether Appellants Agreed To Arbitrate And Appellants Cannot Be Required To Arbitrate If They Never Agreed To Do So

Zhongtie does not dispute the principle (OB 24-26) that whether a party agreed to arbitrate is a matter for the court to decide. *See Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007); *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022); *Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 635 (9th Cir. 2021). Nor does Zhongtie dispute the principle (OB 27-28) that an arbitration award cannot be enforced—and a party cannot be forced to arbitrate—if there was not an agreement to arbitrate. *See Al-Qarqani v. Chevron Corp.*, 8 F.4th 1018, 1023 (9th Cir. 2021).

Zhongtie's waiver argument flies in the face of these fundamental principles. According to Zhongtie (AB 48), "the District Court's holding does not require a party to attend an arbitration to which it did not agree." But this is, in fact, *exactly* what the district court's holding requires. By not attending the arbitration, Appellants supposedly waived the right to say that they did not sign the agreements. Thus, according to Zhongtie and the district court, Appellants' only choices were: (1) attend the arbitration; or (2) be conclusively presumed to have agreed to the arbitration. This Kafkaesque approach directly contradicts black-

16

letter law that arbitration is solely a matter of consent and that a party has a right to argue that it never agreed to arbitrate: "To require the plaintiffs to arbitrate where they deny that they entered into the contracts would be inconsistent with the 'first principle' of arbitration that 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Three Valleys*, 925 F.2d at 1142 (cleaned up) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)).

Zhongtie's only response (AB 48) is that some of the cases were "decided on a motion to compel arbitration, rather than a motion to enforce an arbitration award, and none were Convention cases." However, this procedural difference is irrelevant to the question at issue: whether a party must arbitrate or else waive an argument that it never agreed to arbitrate. And the courts are unequivocal that a party need not arbitrate that issue because it is one for the court to resolve. This Court also has rejected the idea of creating a special waiver rule for New York Convention cases where, as here, there is no such rule in the New York Convention. *See Al-Qarqani*, 8 F. 4th at 1026. In addition, a court considering the issue in the particular procedural posture here held that there was no waiver. *Arb. Between Exceed Int'l Ltd. v. DSL Corp.*, 2014 WL 1761264, at *9 & n.29 (S.D. Tex. Apr. 30, 2014). Zhongtie attempts (AB 50-51) to dismiss this case because the facts were "egregious," but the facts here are even *more* egregious, as

Appellants supposedly waived their rights by not appearing at an arbitration that they did not agree to *and* did not even know was occurring. In any event, Zhongtie ignores the simple, irrefutable logic of *Exceed*: If "the parties did not enter into an agreement to arbitrate their dispute," then the "agreement to arbitrate was not valid," and thus the defendant's "failure to appear before [the tribunal] cannot constitute waiver." 2014 WL 1761264, at *9 & n.29.

In the face of overwhelming precedent, Zhongtie cites (AB 46-47) a few cases, none of which supports its radical expansion of the waiver doctrine. Zhongtie relies on *Europcar Italia, S.P.A. v. Maiellano Tours*, 156 F.3d 310, 315 (2d Cir. 1998), but the respondent in *Europcar* contested the validity of the underlying agreement while *agreeing* that a separate arbitration agreement was valid. *Id.* at 315 ("[T]he supplemental arbitration agreement at issue here, whose validity Maiellano does not dispute … provid[es] that 'any dispute … shall be settled by a final arbitration by an Arbitration Panel.'"). The Second Circuit expressly relied on this critical distinction: "Maiellano has apparently confused the issue of a fraudulently obtained arbitration agreement or award, which might violate public policy and therefore preclude enforcement, with the issue of whether the underlying contract that is the subject of the arbitrated dispute was forged or fraudulently induced—a matter to be determined exclusively by the arbitrators." *Id.* (citation omitted). And the Third Circuit has made the same point, holding that

"*Europcar* is inapposite" where the respondent "argu[es] that the contract containing the arbitration clause itself is forged." *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 286 n.12 (3d Cir. 2003).

Zhongtie also misplaces reliance on *Tianjin Port Free Trade Zone Int'l Trade Serv. Co. v. Tiancheng Chempharm, Inc. USA*, 2018 WL 2436990, at *3 (E.D.N.Y. May 30, 2018), *aff'd*, 771 F. App'x 36 (2d Cir. 2019). In *Tianjin* (unlike here), the party received actual notice of the arbitration and "simply chose not to participate in the . . . proceedings." *Id.* at *4. In any event, *Tianjin* overread *Europcar*, ignoring that the fraudulent contract there did not implicate whether the party had ever agreed to arbitrate in the first place.[5]

Zhongtie's only argument (AB 22-23) as to why a court should refuse to address an argument that a party never agreed to arbitrate is that it would supposedly disturb the status of confirmation of an award as a summary proceeding. But the very case Zhongtie cites explains that "confirmation of an arbitral award under the Convention … 'is not intended to involve complex factual

---

[5]  *Tianjin Port Free Trade Zone Int'l Trade Serv. Co. v. Tiancheng Int'l, Inc.*, No. EDCV172127PASHKX, 2018 WL 4502497, at *4 (C.D. Cal. Sept. 18, 2018), likewise ignores this key point in *Europcar*, and in any event found the allegation of forgery incredible because the respondent received over half a million dollars' worth of goods under the contract he claimed he did not sign. *Id.* Zhongtie also cites (AB 46) *Research & Dev. Ctr. "Teploenergetika," LLC v. EP Int'l, LLC*, 182 F. Supp. 3d 556 (E.D. Va. 2016), which did not involve alleged forgery or any challenge to the agreement to arbitrate, but rather whether the agreement violated public policy. *Id.* at 566-68.

determinations, *other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm*.'" *Castro v. Tri Marine Fish Co. LLC*, 921 F.3d 766, 773 (9th Cir. 2019) (emphasis added; quoting *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007)). Thus, factual determinations are permitted—indeed, required—to determine whether a party established grounds for refusal to confirm. That is not, as Zhongtie puts it (AB 52), "collateral litigation," but the very litigation that the New York Convention permits and that courts routinely conduct to determine whether a foreign award is enforceable. Zhongtie posits (AB 53-54) a parade of horribles whereby arbitration awards will be routinely set aside if parties are allowed to challenge whether their signatures were forged. However, the true horror would be United States courts enforcing a foreign arbitration award where the party claims they never agreed to arbitrate and never even knew the arbitration was being conducted—without *any* inquiry into whether a forgery occurred. There is nothing problematic about conducting this inquiry. As Appellants discussed (OB 30-31), courts know how to resolve factual disputes regarding the existence of an agreement to arbitrate when that situation arises.

Finally, Zhongtie does not dispute Appellants' argument (OB 30) that if there was no actual notice of the arbitration, then there can be no waiver. Zhongtie's only response is its assertion that there was actual notice, but as

discussed *supra* at 11-15, the Commission and district court never found actual notice and there is no evidence supporting it.

### B. Zhongtie Presents No Legal Or Factual Basis For This Court To Resolve The Factual Dispute Over Whether Appellants Signed The Agreements

As Appellants explained (OB 30-32), there must be a hearing or jury trial to resolve whether there was a forgery. Zhongtie briefly suggests (AB 58) that the district court resolved the issue, but the court relied solely on its waiver ruling to deny the forgery argument. 1-ER-8 ("[A]ny challenges related to the validity of the contract – namely, forgery – fails as it was not raised in arbitration."). Zhongtie again relies on a single sentence in the background section of the order that simply quotes the Petition, with no consideration of the evidence on either side. 1-ER-5 ("Respondents affixed their personal seals and signatures to the respective Personal Guarantees.") (quoting Petition ¶13). The court did not suggest it was adopting this statement as fact, and instead expressly held that the issue should not be addressed on the merits because it was supposedly waived. 1-ER-8. As discussed above, this waiver ruling is legally erroneous.

Regardless, the lone sentence is undisputedly false, as there are no "seals" and no "respective Personal Guarantees." *See* OB 32. Zhongtie states (AB 58) that it merely "clarified on reply that the Personal Guarantee executed by Appellants only included their signatures, rather than their seals," but that is not a

"clarification"; it is an admission that the Petition was wrong on this critical point—and ignores also that it was wrong about the nonexistent "respective Personal Guarantees" in addition to the nonexistent seals. Zhongtie suggests (AB 58) that this Court can ignore these falsities and just pluck out the "signatures" language, but there is no plausible basis to do so, given that this sentence is simply a quotation from Zhongtie's own Petition that is unquestionably false.

Given that the district court did not evaluate any of the evidence of forgery, and instead relied only on supposed waiver, the issue should be remanded for the district court to resolve in the first instance. Zhongtie identifies no legal basis for this Court to engage in fact-finding on this issue, and doing so would be improper. *See, e.g.*, *Saucillo v. Peck*, 25 F.4th 1118, 1133 (9th Cir. 2022) ("[F]actfinding is the basic responsibility of district courts, rather than appellate courts.") (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982)). That is especially true given that the parties have not had an opportunity to develop the evidence fully in a hearing or trial.

Such a hearing or trial is necessary because the evidence demonstrates a dispute of material fact as to the authenticity of the signatures on the agreements to arbitrate. Zhongtie concedes (AB 55) that the issue can be resolved without a hearing or trial only if there is no dispute of material fact. *See Three Valleys*, 925 F.2d at 1141 (A court may "decide as a matter of law that the parties did or did not

enter into" an arbitration agreement "[o]nly when there is no genuine issue of fact concerning the formation of the agreement.") (quotation marks omitted). As Appellants explained (OB 31), their affidavits attested to the forgery and create a dispute of material fact. Zhongtie does not explain why the declaration of its own agent should be treated as more persuasive, let alone dispositive, without any further inquiry.[6] Indeed, it is far *less* persuasive given that it is suspiciously precise (OB 31-32), Zhongtie refused to make its declarant available for cross-examination (2-ER-24), and Zhongtie's original theory was based on the false statement regarding "personal seals" and "respective Personal Guarantees" (OB 31-32).

Moreover, courts consistently hold that such dueling declarations create a dispute of material fact. *See* OB 28, 30-31 (citing *GIB, LLC v. Salon Ware, Inc.*, 634 F. App'x 610, 611 (9th Cir. 2016); *Wang v. Kahn*, 2022 WL 36105, at *12 (N.D. Cal. Jan. 4, 2022); *Gonzalez v. Food Mgmt. Partners, Inc.*, 2020 WL 4437267, at *2-4 (C.D. Cal. Aug. 3, 2020); *Chime Inst. v. Haney*, 2013 WL 12114616, at *4 (C.D. Cal. Oct. 28, 2013)). Appellants try (AB 57) to distinguish

---

[6] Zhongtie also notes (AB 57) other supposed evidence, all of which comes in the same declaration from its own representative, where he attempts to play the role of a handwriting expert, a role for which he is obviously unqualified. In any event, this other evidence came only in support of Zhongtie's reply brief, giving Appellants no effective opportunity to put forward evidence in rebuttal. The evidence Appellants would put forward includes information, which Appellants recently have brought to the district court's attention, concerning criminal convictions of individuals who had controlled Zhongtie in China, for their involvement in a massive fraud. *See* Dkt. 141.

these cases on the facts, but the bottom line is that they all, as here, involved primarily (or, for *Gonzalez* and *Chime*, entirely) competing declarations.

As to the cases Zhongtie cites (AB 55-56), none suggests there is no material dispute of fact simply because one party's evidence comes in the form of declarations attesting that they did not sign the agreement. Zhongtie relies (AB 55) principally on *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396 (2d Cir. 2009), but the Second Circuit held there that the party challenging enforcement of the award (because the undisputed signatory supposedly lacked actual or apparent authority) failed to present even "some evidence" that the agreement was invalid. *Id.* at 411 (internal quotation marks omitted); *see also id.* ("There is substantial evidence that [the undisputed signatory] . . . had the authority to execute the 2004 Agreement and there is *no evidence*, at least that has been brought to our attention, that Telenor should have thought otherwise.") (emphasis added). In contrast, the Second Circuit has held since *Telenor* that a sworn denial does, in and of itself, "create[] a triable issue of fact as to the validity of the signature on . . . [an] arbitration agreement[]." *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 53 (2d Cir. 2022); *see also id.* at 51 n.7 (citing cases); *Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 839-40 (6th Cir. 2021) (holding that "an unequivocal denial that takes the form of admissible evidence can create a genuine dispute of fact. . . . So a party might be able to obtain a trial . . . with a sworn denial that the party ever

signed an arbitration agreement or received arbitration materials.").[7]  In sum, the evidence here sufficed to create a dispute of material fact that the district court could not (and did not purport to) resolve without a hearing or trial.

---

[7]  The other cases Zhongtie cites (AB 56) are plainly inapposite, as they do not concern whether an agreement exists, and regardless, hold only that *conclusory* declarations do not suffice.  *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997); *Sundquist v. Ubiquity, Inc.*, 2017 WL 3721475, at *4 (S.D. Cal. Jan. 17, 2017); *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992).   The declarations Appellants provided here are anything but conclusory, with Appellants explicitly attesting that they did not attend the meetings in question and did not sign the agreements at issue.  2-ER-226; 2-ER-237.

## **CONCLUSION**

For the foregoing reasons, this Court should reverse or vacate the order and judgment of the district court.

Respectfully submitted,

Dated:  October 2, 2024

By:  */s/  David M. Cooper*
David M. Cooper
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000

William R. Sears
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone:  (213) 443-3000

*Counsel for Respondents-Appellants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7) and Circuit Rule 32-1, the foregoing reply brief is in 14-point, proportionally spaced Times New Roman type and contains 6,368 words.

Dated:  October 2, 2024      */s/ David M. Cooper*
                                     David M. Cooper

                                     *Counsel for Respondents-Appellants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing Reply Brief for Appellants with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  October 2, 2024          <u>  /s/  David M. Cooper          </u>
                                              David M. Cooper

                                              *Counsel for Respondents-Appellants*